Patrick A. TORCHIA and Twyla Scott, Appellants,

v.

The AETNA CASUALTY AND SURETY COMPANY and Wanda Oldham, Appellees.

No. 08–90–00085–CV.

Court of Appeals of Texas, El Paso.

Jan. 30, 1991.

Rehearing Overruled Feb. 27, 1991.

William E. Ryan, Houston, for appellants.

Charles W. Hurd, Ben Taylor, Fulbright & Jaworski, Houston, for appellees.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

The opinion issued in this case on December 5, 1990 is withdrawn and the following is substituted in its place.

In a suit for breach of the duty of good faith in the handling and settlement of a workers' compensation claim, the trial court granted the defendants' motion for summary judgment. Plaintiffs have appealed claiming eight errors by the court. We affirm.

Patrick A. Torchia ("Torchia"), married to Twyla Scott ("Scott"), was allegedly struck by a truck on June 4, 1985 while working for Texas Brokers. The Aetna Casualty and Surety Company ("Aetna") provided workers' compensation insurance for the employer. Wanda Oldham ("Oldham") is an agent of Aetna. Following a final award by the Industrial Accident Board, Aetna filed suit to set aside the award. The parties agreed on a settlement of all claims culminating in a final judgment, which was signed by the judge on May 19, 1987 and which provided for the payment by Aetna to Torchia of $32,500.00 cash and for the payment of past medical expense not to exceed $35,500.00.

On October 21, 1988, Torchia and Scott filed the present suit, alleging that Aetna (and Oldham) breached its duty to deal fairly and in good faith by its handling and settling of Torchia's compensation claim, including not only the settlement and release of the compensation claim but also any claims Torchia might have then had, or in the future have, against Aetna. Torchia also alleged that his release was void for lack of consideration, was signed by him as a result of a unilateral mistake, and was procured by Aetna's breach of its good faith duty. Torchia and Scott, the latter having alleged a loss of consortium resulting from the negligence of Aetna and Oldham in handling and settling her husband's compensation claims, pled for actual and exemplary damages.

Aetna answered with the affirmative defense of release and subsequently filed its motion for summary judgment based primarily on the same ground. After filing a response to that motion claiming inter alia a breach of the good faith duty by acts that occurred at or after the signing of the settlement papers and denying that there was any judicial admission made by Torchia in signing such papers, Torchia and Scott filed their own motion for a partial summary judgment declaring the release to be void for want of consideration, attaching thereto Torchia's second affidavit repudiating the affidavit he had given in support of the earlier settlement. Aetna, in reply to Torchia's response to its motion for summary judgment and in response to Torchia's motion, reiterated its position that the release was supported by adequate consideration and invoked the doctrine of judicial estoppel against the efficacy of Torchia's second affidavit. Following a hearing, the court granted Aetna's motion but made no disposition of Torchia's motion for partial summary judgment in its final judgment. The parties agree that the partial motion was effectively overruled by the judgment entered in the case. We agree since by the granting of Aetna's motion, the judgment is final in the sense that it disposes of all parties and claims. *North East Independent School District v. Aldridge*, 400 S.W.2d 893, 895 (Tex.1966).

In reviewing a summary judgment appeal, the normal rule is that this Court

must determine whether the successful movant in the trial court carried its burden of showing that there is no genuine issue of a material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Company, Inc.,* 690 S.W.2d 546, 548 (Tex.1985). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movant is to be taken as true, and in that connection, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon,* 690 S.W.2d at 548–49. Where a defendant, as in this case, has moved for a summary judgment based on the affirmative defense of release, its burden is to prove conclusively all the elements of that defense as a matter of law to the extent that there is no genuine issue of material fact. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex. 1984).

Torchia/Scott's first point of error is the general one that the trial court erred in granting Aetna's motion for summary judgment. Unsupported by argument, and in view of our disposition of the other points of error which are specific, the first point is overruled.

In their third through eighth points of error, Torchia/Scott contend that the court erred in granting the summary judgment for various reasons: the existence of material fact issues as to the lack of consideration to support the release of his bad faith claims (third and fourth points); no judicial admission that the liability of Aetna on the compensation claim was uncertain (fifth point); the existence of material fact issues as to whether Aetna breached its good faith duty by its acts after the release was signed (sixth point); the existence of material fact issues as to whether Torchia's release should be rescinded because of Torchia's unilateral mistake of fact in signing the release (seventh point) and Aetna breached its good faith duty in procuring the release (eighth point).

■ With respect to the contention that a fact issue exists as to whether or not there was a lack of consideration to support the release of Torchia's bad faith claims, the judgment after reciting that Aetna would pay to Torchia $32,500.00 in settlement of all of his workers' compensation claim, provided as follows:

> The parties further expressly agreed that their settlement extends to all claims, demands, and causes of action, which cross-plaintiff [Torchia] may have now or in the future, *arising out of the manner in which cross-defendant* [Aetna], and its counsel, *handled, settled, or defended any of the cross-plaintiff's claims under the Texas Workers' Compensation Act.* [Emphasis added].

> After this agreement was made known to the Court, the Court heard evidence concerning the reasonableness of the settlement, including evidence of the injuries suffered by the cross-plaintiff, the extent of the cross-plaintiff's resulting disability, the compensation rate of the cross-plaintiff, *and all other evidence deemed by the Court necessary to a determination of the fairness of the proposed settlement. The Court then decided that the liability of the cross-defendant is uncertain,* that the proposed compromise settlement is fair, and that the settlement should be approved. The Court now approves the settlement. [Emphasis added].

The judgment was approved and agreed to by Torchia and his attorney. In his settlement affidavit executed by him nearly two weeks before the judgment was signed, Torchia acknowledged "that if the Court approves the settlement, I shall not be able to collect any further monies or sums as a result of the injury made the basis of this suit or *as a result of the manner in which cross-defendant and its agents and counsel, and my employer, have handled, defended, and settled my claim."* [Emphasis added]. In another paragraph setting forth the background of his claim and Aetna's defense, Torchia acknowledges that he is "aware that the liability of the cross-defendant is uncertain."

Although Torchia admits initially that he received the $32,500.00 consideration, he contends first, that this sum applied only to

the compensation claim and not to the bad faith claim since the release of multiple claims requires separate consideration for each claim, citing *Hallmark v. United Fidelity Life Insurance Company*, 155 Tex. 291, 286 S.W.2d 133 (1956) in support of that proposition. *Hallmark* is not in point since it involved claims for two liquidated amounts (the face amount of a life insurance policy and double indemnity if death was accidental). That the death may have been accidental was not known or available to the beneficiary when she signed a general release from all liability under the policy upon receipt of the face amount. In this case, by the very nature of the suit to set aside the IAB award because of questionable liability, by the finding of the court in its agreed judgment after hearing evidence that the liability of Aetna was uncertain, and by Torchia's awareness in his sworn affidavit to the same effect after acknowledging that there were two witnesses who could conceivably defeat his compensation claim, that claim was unliquidated. Therefore, at the time he signed the releases, both of Torchia's claims were unliquidated and the operative facts which could conceivably give rise to the bad faith claim were available to him and his attorney. In addition, the releases specifically recite both compensation and bad faith claims.

■ Torchia's claim in his second affidavit of no consideration to support the release of his bad faith claim is a mere conclusion and does not raise a fact issue. *Buddy "L", Inc. v. General Trailer Company, Inc.*, 672 S.W.2d 541, 547 (Tex.App. —Dallas 1984, writ ref'd n.r.e.). Although a release must be supported by valid consideration, any consideration, however slight in amount, is sufficient if accepted by the person giving the release. *Texarkana Nat. Bank v. Hubbard*, 114 S.W.2d 389, 392 (Tex.Civ.App.—Beaumont 1938, writ dism'd). Mere inadequacy of consideration is not a sufficient ground to set aside a release. *McClellan v. Boehmer*, 700 S.W.2d 687, 694 (Tex.App.—Corpus Christi 1985, no writ). Torchia's release extended to all claims arising out of the injury made the basis of the suit, not just to the compensation benefits he was claiming. One consideration can support the release of more than one claim. *McClellan*, 700 S.W.2d at 693; *Williams v. Glash*, 769 S.W.2d 684 (Tex.App.—Houston [1st Dist.] 1989), rev'd on grounds of mutual mistake, 789 S.W.2d 261 (Tex.1990).

■ In an attempt to avoid *McClellan*, *Williams* and *Buddy "L"*, Torchia asserts that there was no consideration paid since later as a result of his third party action, Aetna recovered under its subrogation rights the full amount paid to him. Torchia claims that Aetna made a judicial admission by alleging in its petition in intervention in the third party action that it was entitled to recover the entire $32,500.00 it "was required under the Workers' Compensation Act of the State of Texas to pay [Torchia]." Since one consideration will support the release of multiple claims and Aetna was entitled under the law to exercise its rights of subrogation, this was not an admission that the amount paid was consideration only for the release of the compensation claim.

■ In an effort to prevent Aetna from claiming any part of the $32,500.00 as consideration for release of the bad faith claims, Torchia invokes the rule of collateral estoppel. Inasmuch as we have concluded that the consideration accepted by Torchia went to both compensation and bad faith claims, the rule works against him. Since collateral estoppel is only available in a subsequent action, where, as here, there has been full and fair litigation in the previous suit of the same fact issues; *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Dominguez*, 793 S.W.2d 66, 71 (Tex.App.—El Paso 1990, writ denied, mot. reh. pending); a final judgment agreed to by the parties serves as an estoppel only as to those facts actually and necessarily decided. *Dominguez*, 793 S.W.2d at 71; *Izaguirre v. Texas Employers' Insurance Association*, 749 S.W.2d 550, 555 (Tex.App.—Corpus Christi 1988, writ denied). In order to settle the case, it was actually and necessarily decided that Aetna's liability was uncertain, that the settlement was fair and that the re-

lease extended to both compensation and bad faith claims.

■ Moreover, although Torchia in his second affidavit claimed that he understood that the $32,500.00 paid to him was for settlement of his workers' compensation claim and that he received no money for the release of his bad faith claim, he is judicially estopped from asserting that position contrary to the position he took in the former workers' compensation proceeding by virtue of his sworn affidavit. *Long v. Knox*, 155 Tex. 581, 291 S.W.2d 292, 295 (1956); *Dominguez*, 793 S.W.2d at 72; *Washburn v. Associated Indemnity Corporation*, 721 S.W.2d 928, 932 (Tex.App.—Dallas 1986), writ ref'd n.r.e., 735 S.W.2d 243 (Tex.1987). Thus, Torchia is both collaterally and judicially estopped to claim that he received no consideration for his release of the bad faith claim.

■ While relying on the judicial estoppel created by Torchia's first affidavit, Aetna also appropriately relies on *Izaguirre* for the proposition that where a claimant has agreed "that the liability of said INSURANCE CARRIER is indefinite, uncertain and incapable of being satisfactorily established," as in *Izaguirre*, or "that the liability ... [Aetna] ... is uncertain, [and] that the proposed compromise settlement is fair, ..." as in the case *sub judice*, it is established as a matter of law that the carrier had a reasonable basis for withholding compensation payments and the claimant cannot subsequent to the filing of the final compensation judgment and supporting documents claim a breach of the good faith duty by the carrier. *Izaguirre*, 749 S.W.2d at 555. We agree and hold that by his affidavit and agreement that the liability of the carrier was uncertain and that the settlement was fair, Torchia cannot subsequently be heard to claim that Aetna breached its duty to deal with his claim in good faith. Torchia's third and fourth points of error are overruled.

In their fifth point, Torchia/Scott's complaint concerns the question of whether he made a judicial admission that the liability of Aetna on his compensation claim was uncertain. As far as we can determine, Aetna has not argued that Torchia's acknowledgement that his awareness of the uncertainty of his claim was a judicial admission. The fifth point of error is overruled.

■ Torchia/Scott next assert in their sixth point that the summary judgment record raises material fact issues concerning Aetna's breach of its good faith duty by acts that occurred after the release was signed. Here, the contentions are that Aetna breached its good faith duty by requesting the court to enter judgment based on the settlement papers signed by Torchia releasing the bad faith claim along with the compensation claim, and by failing to request that the judgment be set aside before it became final. Torchia/Scott cite no case in support of the proposition that the insurance carrier's duty of good faith and fair dealing extends beyond the execution of the release. Torchia's first affidavit clearly contemplated court approval of the settlement and entry of an agreed judgment. Torchia stated in that affidavit that he was acting upon his own judgment and that of his attorney. Lack of good faith and conscious indifference are not the same concept, as contended by Torchia. *Dominguez*, 793 S.W.2d at 74. Assuming there were facts showing a breach of the duty of good faith and fair dealing by Aetna amounting to negligence or conscious indifference in this case, those facts had already occurred and if not actually known to Torchia and his attorney, were readily available to them. This was not a "prospective release" nor was there a disparity of bargaining power under the circumstances of this case. We hold that the good faith duty ended when the release was signed. The sixth point is overruled.

■ Torchia/Scott assert in their seventh point that the court erred in granting the summary judgment since his second affidavit raises a material fact issue as to the unilateral mistake he made in not reading the settlement documents before signing them. Parties to an agreement have a duty to read what they sign. *G–W–L, Inc. v. Robichaux*, 643 S.W.2d 392, 393 (Tex. 1982); *McClellan*, 700 S.W.2d at 691. Ab-

sent fraud in procuring the signing of the release, unilateral mistake is not grounds for rescinding or setting aside a release. *Wheeler v. Holloway,* 276 S.W. 653, 654 (Tex.Comm'n App.1925, judgment adopted); *McClellan,* 700 S.W.2d at 693. Even where one court indicated it would consider setting aside a release because of unilateral mistake if due diligence was shown, an absence of due diligence was shown by his failure to read the document presented to him. *Pack v. City of Fort Worth,* 552 S.W.2d 895 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n.r.e., 557 S.W.2d 771 (Tex. 1977). Appropriately under the facts of this case, Torchia/Scott have not alleged mutual mistake, so we are not faced with the prospect of having our Supreme Court find a mutual mistake where none exists. *Williams v. Glash,* 789 S.W.2d 261, 264–5 (Tex.1990). The seventh point of error is overruled.

 In their eighth point of error, Torchia/Scott make a plea and argument for rescission of the release because Aetna, being in a far superior bargaining position, breached its good faith duty by procuring a release that released more than just the compensation claim. Here, they argue that there existed a confidential or fiduciary relationship between the parties, arising because of a "great disparity of bargaining power." The duty on the part of the compensation carrier is to deal fairly and in good faith with the injured employee in the processing of his compensation claim. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210 (Tex.1988). Assuming that a confidential or fiduciary relationship between these parties existed at some point, that relationship would necessarily have ended long before the eve of a jury trial where both parties, adversaries represented by presumably competent counsel, were getting ready "to fight tooth and nail" for their respective positions. None of the cases cited by Torchia/Scott have any application to our fact situation where a jury has a way of evening up the bargaining power. The eighth point of error is overruled.

 Finally, in the second point of error, Torchia/Scott assert that Scott's claim for loss of consortium could not be barred by a release signed by Torchia and therefore, the court erred in granting a summary judgment for Aetna. While a wife's claim for loss of consortium based on negligent injuries to her husband is considered to be derivative of his cause of action in the sense that liability of the tortfeasor for his injuries must first be established, the claim for loss of consortium is, nevertheless, independent from her husband's negligence action. *Whittlesey v. Miller,* 572 S.W.2d 665, 667 (Tex.1978). The husband, by signing a settlement agreement and release, cannot preclude his wife's right to pursue her claim for loss of consortium. *Whittlesey,* 572 S.W.2d at 669. However, unless the liability of the tortfeasor for her husband's *injuries* can be shown, the wife has no cause of action or claim regardless of the extent of her injuries. *Reed Tool Company v. Copelin,* 610 S.W.2d 736, 738 (Tex.1981). As discussed and determined under Torchia/Scott's third and fourth points, Torchia's unconditional approval of the final judgment wherein the court found that Aetna's liability was uncertain and that the settlement was fair, and his affidavit to the same effect, established as a matter of law that Aetna had a reasonable basis for not paying compensation. Therefore, liability of Aetna for any alleged injuries sustained by Torchia as a result of Aetna's failure or refusal to pay compensation cannot be shown for the reason that, as a matter of law, there was no breach of the duty to deal fairly and in good faith. The difference between a loss of consortium claim under *Whittlesey* and *Reed Tool Company* and a similar claim in this case is that in the former, the liability of the tortfeasor, if any, for injuries to the husband and the derivative claim of the wife arose at the time the tort was committed, whereas in the case *sub judice* the liability of Aetna has been precluded by the judgment and affidavit. As held in *Reed Tool Company,* where a wife's claim is derivative in nature, any "defense that tends to constrict or exclude the tortfeasor's liability to the in-

jured husband will have the same effect on the wife's consortium action." 610 S.W.2d at 738–9. The second point of error is overruled.

Having overruled all points of error, we affirm the summary judgment.