**Francisco GARCIA, Individually and as Next Friend of Francisco Garcia, Jr. and Kevin Garcia, Minor Children, Appellants,**

v.

**J.J.S. ENTERPRISES, INC. d/b/a PDQ Drive-In Grocery, Appellee.**

**No. 08–04–00179–CV.**

Court of Appeals of Texas, El Paso.

Aug. 25, 2005.

Robert O. Fischel, Franklin D. Azar & Associates, Aurora, CO, for appellant.

Robert D. Ramage, Eric G. Walraven, Godwin Gruber, Dallas, for appellee.

Before BARAJAS, C.J., McCLURE, and CHEW, JJ.

### OPINION

DAVID WELLINGTON CHEW, Justice.

Appellants Francisco Garcia, Individually and as Next Friend of Francisco Garcia, Jr. and Kevin Garcia (collectively "the Garcias") are the surviving spouse and children of Rosario Michelle Garcia, who tragically died during the course of a robbery at a convenience store owned and operated by her employer Appellee J.J.S. Enterprises, Inc. d/b/a PDQ Drive–In Grocery ("J.J.S. Enterprises"). By four points of error, the Garcias challenge the trial court's granting of summary judgment in favor of J.J.S. Enterprises. For the reasons stated below, we must affirm.

In November 2000, Mrs. Garcia was working as a cashier at the PDQ Drive–In Grocery store in Anthony, Texas. Mrs. Garcia had been working at the store for almost three months. According to the affidavit of owner James J. Stewart, Mrs. Garcia had been trained on store policies concerning how to deal with shoplifting, robbery, theft, or a hold-up and was also provided this information through the com-

pany's employee handbook and handbook on workplace safety. Mr. Stewart attested that he explained to Mrs. Garcia that in the event of such criminal conduct, the store policy was that the employee was to fully cooperate with the robber, to never try to fight back or resist a robber's request or command, and to call the police after the robber left the store. Specifically, he stated that he explained to her that she was never to try to stop a thief or shoplifter personally, but rather the store policy was to allow that individual to leave the premises and then call the police and give them whatever descriptive information the employee has acquired.[1]

On November 10, 2000, Loraine Urquidi and her high school friends had ditched school and had been partying and drinking beer throughout the day. When they ran out of beer, they decided to steal some beer from a store or do a "beer run." Around two o'clock that afternoon, Urquidi and friends drove in a pickup truck to the PDQ store. Urquidi walked into the store, grabbed an 18–pack of beer, and walked toward the counter as if she was going to pay for the beer, but then quickly walked out of the store. Urquidi threw the beer into the back of the waiting truck, and then hopped into the passenger side seat.

Witnesses saw Mrs. Garcia and Jack Stewart, the store manager and owner's son, run out of the store following after Urquidi.[2] Mrs. Garcia ran to the driver's side door and grabbed the door handle as the truck started to move. The driver accelerated at a high rate of speed and drove forward with Mrs. Garcia hanging onto the handle. When Mrs. Garcia lost her grip, she fell beneath the vehicle and was run over by the rear driver side dual tires. Mrs. Garcia died from her injuries.

The Garcias brought a wrongful death suit against J.J.S. Enterprises in which they alleged J.J.S. Enterprises was negligent in its exercise of control over Mrs. Garcia and/or its enforcement or non-enforcement of company policies at the time of the incident and that this negligence was the proximate cause of her death.[3] J.J.S. Enterprises moved for traditional and no-evidence summary judgment on grounds that it was not liable as a matter

---

1. In the company's handbook, the following instruction on shoplifting was provided to employees:

   THE MOST COSTLY PROBLEM FACING TODAY'S MERCHANTS IS CUSTOMER AND EMPLOYEE THEFT. EVERY YEAR BILLIONS OF DOLLARS ARE LOST TO THIS CRIME. WHEN AN EMPLOYEE WITNESSES A THEFT HE SHOULD IMMEDIATELY NOTIFY THE PERSON IN CHARGE. KEEP THE SHOPLIFTER IN SIGHT. WE MUST KNOW THE ITEM TAKEN IS STILL ON HIS PERSON AND NOT PAID FOR WHEN HE GOES OUT THROUGH THE DOOR. THIS IS A VERY SERIOUS MATTER AND MUST BE HANDLED WITH EXTREME CAUTION. TO ACCUSE A CUSTOMER BECAUSE YOU THINK HE HAS TAKEN SOMETHING COULD CREATE A VERY SERIOUS SITUATION. THIEVES COME IN ALL SHAPES, FORMS, AND AGES—WATCH EVERYONE ALWAYS. IT IS BEST TO CALL THE POLICE IN CASES OF SHOPLIFTING. WHEN VERY SMALL CHILDREN ARE INVOLVED, CALL THEIR PARENTS.

2. There was conflicting summary judgment evidence as to whether Mrs. Garcia and Jack Stewart ran out together or whether Mrs. Garcia ran out of the store first or second. According to Jack Stewart, he saw Mrs. Garcia run out the door and followed behind her. He stated that he did not know the girl she was chasing was a shoplifter until he saw the girl throw the beer into the truck.

3. The Garcias also brought negligence claims against the driver, Ruben Rivas, Jr. and the owners of the truck, his uncle Juan Diego Rivas, and his father Ruben Rivas d/b/a JYR Enterprises. These defendants were non-suited without prejudice on June 17, 2004 and are not parties to this appeal.

of law because the event was not foreseeable and alternatively, there was no evidence that the event was foreseeable nor evidence that J.J.S. Enterprises' conduct was the proximate cause of her death. In a supplemental summary judgment motion, J.J.S. Enterprises also asserted that the Garcias were barred from pursuing the lawsuit because Mrs. Garcia had waived her right to sue J.J.S. Enterprises by executing a pre-injury waiver in exchange for acceptance of benefits provided by the company's employee welfare benefit plan. After a hearing, the trial court granted summary judgment in favor of J.J.S. Enterprises, without stating the grounds for its ruling. The Garcias now bring this appeal.

### Standards of Review

J.J.S. Enterprises filed a hybrid summary judgment motion and a supplemental summary judgment motion, in which it raised both traditional and no-evidence points. *See* Tex.R.Civ.P. 166a(c), 166a(i). The standards for reviewing traditional and no-evidence summary judgment rulings are well-established. The movant for traditional summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* Tex. R.Civ.P. 166a(c); *Nixon v. Mr. Property Management Co., Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Duran v. Furr's Supermarkets, Inc.*, 921 S.W.2d 778, 784 (Tex.App.-El Paso 1996, writ denied). When a defendant is the movant for summary judgment, it must either disprove at least one element of the plaintiff's theory of recovery or conclusively establish all essential elements of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.1997); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678–79 (Tex.1979). Once the defendant establishes its right to sum-

mary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact, thereby precluding summary judgment. *City of Houston*, 589 S.W.2d at 678–79. In determining whether there is a disputed material fact issue precluding summary judgment, all evidence favorable to the non-movant must be taken as true and all reasonable inference, including any doubts, must be resolved in the non-movant's favor. *Nixon*, 690 S.W.2d at 548–49; *DeLuna v. Guynes Printing Co. Of Texas, Inc.*, 884 S.W.2d 206, 208 (Tex.App.-El Paso 1994, writ denied).

A no-evidence summary judgment under Rule 166a(i) is essentially a pretrial directed verdict and as such, we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Wyatt v. Longoria*, 33 S.W.3d 26, 31 (Tex.App.-El Paso 2000, no pet.). The party moving for no-evidence summary judgment must assert that there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial. *See* Tex. R.Civ.P. 166a(i). The burden then shifts to the non-movant to produce evidence raising a fact issue on the challenged elements. *See id.* To raise a genuine issue of material fact, the non-movant must set forth more than a scintilla of probative evidence as to an essential element of the non-movant's claim or defense. *See id.; Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). More than a scintilla of evidence exists when the evidence " 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.' " *Havner*, 953 S.W.2d at 711. Less than a scintilla of evidence exists when the evidence is "so weak as to do no

more than create a mere surmise or suspicion" of the existence of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). As with a traditional summary judgment, we view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *See Havner*, 953 S.W.2d at 711.

Where the trial court has granted summary judgment without specifying the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Rogers v. Ricane Enter., Inc.*, 772 S.W.2d 76, 79 (Tex.1989).

### Waiver

■ In its supplemental motion, J.J.S. Enterprises asserted that the pre-injury waiver executed by Mrs. Garcia barred the Garcias from pursuing their negligence lawsuit. In their response and on appeal, the Garcias contend that the pre-injury waiver is void because it is against public policy, and alternatively, it is unenforceable because it fails to meet the test of Express Negligence and Fair Notice. Though we find merit in the first two points of error, we have concluded that the waiver issue is dispositive.

Uncontroverted summary judgment evidence shows that Mrs. Garcia elected to participate in her employer's Occupational Accident Employee Welfare Benefit Plan (the "Plan") at the start of her employment on August 16, 2000. On that date, Mrs. Garcia signed the following document:

> As a result of the Company not having workers' compensation insurance coverage, you may have certain rights under the common laws of Texas for damages arising out of work-related illness or injury. If, however, you chose to participate in the Company's Occupational Accident [E]mployee Welfare Benefit Plan by requesting the benefits provided by the Plan, you hereby agree to accept the Plan benefits as the only benefits you are entitled to receive in the event of a work-related injury and to waive any and all other causes of action, claims, rights, and demands that you could make against the Company, its successors, assigns, employees, officers, directors, shareholders, agents and clients. Participation in the Company's Occupational Accident Employee Welfare Benefit Plan is not compulsory for employees of the Company, and the Company is not required by any law or regulation to make available the level of benefits provided by this Plan. The Plan is administered by a Plan Administrator in accordance with the policies and procedures described in the Plan's legal documents which govern eligibility, benefits, limitations, and exclusions. Payments made according to the terms of this Plan do not constitute admission of liability on the part of the Company nor do they toll any applicable statute of limitations governing actions by employees against employees.
>
> By executing this Agreement, you hereby acknowledge that the Company's Occupational Accident Employee Welfare Benefit Plan, as explained herein and in the Plan's legal documents, is voluntary on the part of the Company and is not fringe benefit, but that is instead a program offered at the discretion of the Company and is designated to provide benefits for the injured employee and to protect the interest of the Company. Further, by executing this agreement, and in consideration your participation in the Company's Occupational Accident

Employee Welfare Benefit Plan, you hereby agree that all funds received by you under the terms of this Plan will insure to or be to the advantage of and for the benefit of the Company in the event of litigation. If a third party may be liable for an injury to you in your status as an employee of the Company and you may have rights of recovery for damages, by your execution of this Agreement, you do hereby agree to execute an assignment of rights document for the purpose of allowing the Company to recover any payments it may have made to you or on your behalf in connection with the injury.

By my signature below, I acknowledge that this non-subscriber program has been explained to me and that I was given the opportunity to ask questions, have my questions answered, and to make comments. It was further explained to me that my employment and/or continued employment was not conditional upon he [sic] execution of this Agreement, but that by my execution of this Agreement I am agreeing to comply with the terms of the Plan and this Agreement. I understand that participation in the Plan is not Compulsory, and understanding that, I hereby agree to participate in the Plan and to recover the benefits provided to me by the Company through this Occupational Accident Employee Welfare Benefit Plan. I also understand that, by executing this Agreement, I have waived certain claims and rights as stated herein.

In an uncontroverted affidavit, James J. Stewart attested that upon hiring Mrs. Garcia, he explained to her that by her acceptance of the Plan, it would be "the sole and exclusive remedy she would be entitled to receive from the company in the event of any work-related injury or death." Mr. Stewart stated that he also explained that since the company was a "non-sub-scriber" to the Texas workers' compensation insurance coverage scheme, by accepting the Plan, "she would be waiving any of her common-law rights to bring a lawsuit against PDQ in the event she was injured or was killed on the job." According to Mr. Stewart, Mrs. Garcia expressed to him that: (1) she understood the rights she was waiving and wanted to do so in order to obtain Plan benefits; and (2) she understood that her participation in the Plan was not compulsory and that she was free to decline to participate if she wanted to preserve the rights of her or her beneficiaries to bring a lawsuit against the company in the event she was injured or killed in the future. It is undisputed that the Garcias received a life insurance payment in the amount of $107,120, an accidental death benefit under the Plan.

The Garcias contend that the pre-injury waiver Mrs. Garcia executed is void because it is against public policy in Texas. We first observe that Mrs. Garcia executed the waiver on August 16, 2000 and suffered her fatal injury on November 10, 2000. In 2001, the Texas Legislature amended Section 406.033 of the Texas Labor Code to provide that an employee may not waive a cause of action against a non-subscribing employer for an injury sustained in the course and scope of employment before the employee's injury or death and that any such agreement is void and unenforceable. *See* Tex.Lab.Code Ann. §§ 406.033(e), 401.002 (Vernon Supp.2004–05). The effective date of the amendment was June 17, 2001. *See* Acts of 2001, 77th Leg. R.S., ch. 1456, § 16.01, 2001 Tex.Gen. Laws 5196. Prior to the amendment prohibiting pre-injury waivers, the Texas Supreme Court in *Lawrence v. CDB Servs., Inc.*, 44 S.W.3d 544 (Tex.2001) had held that an employee's voluntary pre-injury election to participate in a non-subscribing employer's benefit plan in lieu of his or her

common law remedies against the employer for work-related injuries was not prohibited by law and was not against public policy. *Lawrence*, 44 S.W.3d at 550–53. In light of the amendment, the Texas Supreme Court in *Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex.2004), clarified that its decision in *Lawrence* remains the law for claims brought by workers who have both signed non-subscriber agreements and suffered injury before the effective date of the amendment, that is, June 17, 2001. *See Reyes*, 134 S.W.3d at 192; *Villareal v. Steve's and Sons Doors, Inc.*, 139 S.W.3d 352, 354 (Tex.App.-San Antonio 2004, no pet.)(noting the typographical error in the applicable effective date in *Reyes* ).

The Garcias do not dispute that *Lawrence* governs this case. Rather, they assert that the waiver in this case is significantly unlike the release agreements at issue in *Lawrence*. Specifically, the Garcias argue that the release agreements in *Lawrence* were held not to violate public policy because they had "very clear 'releasing' language, set out in bold" and were "clearly entered into by the employees voluntarily...." However, we find that the Garcias' reliance on *Lawrence* in this regard is misplaced. The Court's determination that such agreements were not void on public policy grounds did not turn on the inclusion of all the particular representations contained within the release agreements in that case. *See Lawrence*, 44 S.W.3d at 553 ("Given the lack of any clear legislative intent to prohibit agreements like the ones before us, and absent any claim by the petitioners of fraud, duress, accident, mistake, or failure or inadequacy of consideration, we decline to declare them void on public policy grounds."). Although the Court did give special import to the voluntariness of the employee's election and the fact that the release agreements at issue were not made a condition of employment, such considerations do not effect the outcome in this case because the uncontroverted summary judgment evidence establishes that Mrs. Garcia's pre-injury waiver was both voluntary and was expressly not made a condition of her employment. *See Lawrence*, 44 S.W.3d at 549–50. Therefore, *Lawrence* provides no support of the Garcias contention that the pre-injury waiver is void on public policy grounds.

▪▪▪ Alternatively, the Garcias argue that the pre-injury waiver failed to meet the express-negligence and fair-notice tests and therefore, is unenforceable. Under Texas contract law, there are two fair notice requirements for release agreements: (1) the express negligence doctrine and (2) the conspicuousness requirement. *See Reyes*, 134 S.W.3d at 192; *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex.1993). The express negligence doctrine requires that a party's intent to be released from the consequences of that party's own negligence, must express that intent in specific terms within the four corners of the contract. *See Fisk Elec. Co. v. Constructors & Assoc., Inc.*, 888 S.W.2d 813, 814 (Tex.1994); *Ethyl Corp. v. Daniel Constr. Co.*, 725 S.W.2d 705, 708 (Tex.1987). Second, the releasing language must be conspicuously written, such that a reasonable person against whom it is to operate ought to have noticed it. *See Dresser*, 853 S.W.2d at 511. For example, language that appears in contrasting type or color, in capitals, or otherwise calls attention to itself satisfies the conspicuous requirement. *See Reyes*, 134 S.W.3d at 192, *citing Littlefield v. Schaefer*, 955 S.W.2d 272, 274–75 (Tex. 1997); *Dresser*, 853 S.W.2d at 511; *see also* TEX.BUS. & COM.CODE ANN. § 1.201(10)(Vernon Supp.2004–05). However, if both contracting parties have actual knowledge of the agreement, it can be

enforced even if the fair notice requirements were not satisfied. *Reyes,* 134 S.W.3d at 192; *Dresser,* 853 S.W.2d at 508 n. 2, *citing Cate v. Dover Corp.,* 790 S.W.2d 559, 561 (Tex.1990).

On appeal, J.J.S. Enterprises argues that Mrs. Garcia's pre-injury waiver satisfied the fair notice requirements. Further, it asserts that its summary judgment evidence established as a matter of law that both contracting parties had actual knowledge of the Plan's terms, including the waiver provision, therefore the agreement is enforceable even if the fair notice requirements were not met. The burden of establishing actual knowledge fell on J.J.S. Enterprises. *See Missouri Pacific R.R. Co. v. Lely Development Corp.,* 86 S.W.3d 787, 791 (Tex.App.-Austin 2002, pet. dism'd)(The party seeking indemnification has the burden of establishing actual notice or knowledge). In its supplemental motion, J.J.S. Enterprises asserted that Mr. Stewart's affidavit established that Mrs. Garcia was fully aware of the rights and potential future claims and causes of action she was waiving at the time she signed the pre-injury waiver agreement. Mr. Stewart offered uncontroverted affidavit testimony that upon hiring Mrs. Garcia, he explained to her that she would be waiving any common-law rights to bring a lawsuit against the company in the event she was injured or killed on the job and, according to Mr. Stewart, she understood the rights she was waiving and wanted to do so in order to participate in the company's benefit plan. We must agree that J.J.S. Enterprises established that Mrs. Garcia had actual knowledge of the parties' agreement and therefore, as a matter of law, it is enforceable. Because the pre-injury waiver is valid, the Garcias are barred from bringing the underlying lawsuit under the terms of that agreement. Points of Error Three and Four are overruled.

As previously noted, when the trial court has granted summary judgment without specifying the ground or grounds relied on for the ruling, summary judgment will be affirmed on appeal if any of the theories advanced are meritorious. *See State Farm Fire & Cas. Co.,* 858 S.W.2d at 380; *Rogers,* 772 S.W.2d at 79. Since the trial court's ruling can be affirmed on the ground that the pre-injury waiver barred the Garcias' negligence claims and cause of action as a matter of law, there is no purpose to be served by considering the Appellants' first two points of error.

We affirm the trial court's judgment.