# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-11-00700-CV

**Revel Thom, Appellant**

**v.**

**Rebel's Honky Tonk; Rainbow Cattle Company, Inc., and Zack Truesdell, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-10-001074, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment dated August 30, 2012, and substitute the following in their place. The appellant Revel Thom's motions for rehearing and reconsideration en banc are denied.

Revel Thom appeals from a final summary judgment in favor of Rebel's Honky Tonk, Rainbow Cattle Company, Inc., and Zack Truesdell (collectively, "Rebel's") on Thom's claims for negligence, premises liability, negligence per se, and negligent hiring. Thom argues that the district court erred by granting the motion for summary judgment because appellees failed to conclusively establish their defenses of release and assumed risk and because he raised genuine issues of material fact on two of his claims. We will affirm the district court's judgment.

## BACKGROUND

Thom's claims arise from his visit to Rebel's Honky Tonk, a downtown Austin bar owned by Rainbow Cattle Co., Inc. While there, Thom decided to ride a mechanical bull that was owned and operated by Rebel's. Before riding the mechanical bull, Thom completed and signed a release document provided to him by Rebel's entitled "**PARTICIPANT AGREEMENT, RELEASE AND ASSUMPTION OF RISK**" (Release). This document purported to have Thom acknowledge the risks of riding the mechanical bull, disclose any pre-existing health issues, and release and indemnify Rebel's and related parties.

Although Thom had suffered from chronic back pain for four to five years requiring him to receive annual epidurals to numb the pain, he said nothing about his back condition to the mechanical bull operator. Thom rode the mechanical bull until he was thrown off, resulting in the fracture of the T-12 and L-1 vertebrae in his back. Thom then sued Rebel's for his injuries.

Rebel's moved for a traditional summary judgment, arguing that it conclusively established the affirmative defenses of release and assumption of the risk. Rebel's attached to its motion and supplemental motion a copy of the Release, admissions, and excerpts from Thom's affidavit. Rebel's also sought a no-evidence summary judgment on Thom's claims of negligence and negligent supervision. Thom objected to the appellees' summary-judgment evidence and responded with his own evidence, including: affidavits from Thom and his private investigator Dana James-Johnson, medical drawings of Thom's broken vertebrae, and excerpts from the depositions of bar manager Chris Hale and Rainbow Cattle Company president Zack Truesdell. Rebel's filed objections to the affidavits and the medical drawings that Thom produced. The

2

district court signed an order sustaining Rebel's objections to James-Johnson's affidavit, the medical drawings, and certain statements in Thom's affidavit, then granting Rebel's motion for summary judgment without stating the basis for its ruling. This appeal followed.

## ANALYSIS

### Standard of review

The party moving for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 222 (Tex. 1999); *see* Tex. R. Civ. P. 166a(c). We review the district court's summary judgment ruling de novo. *Zurich American Ins. Co. v. McVey*, 339 S.W.3d 724, 727 (Tex. App.—Austin 2011, pet. denied). In deciding whether there is a disputed material fact issue precluding summary judgment, we take evidence favorable to the non-movant as true, indulge every reasonable inference in favor of the non-movant, and resolve any doubts in its favor. *Rhone-Poulenc, Inc.*, 997 S.W.2d at 223; *see* Tex. R. Civ. P. 166a(c). Because the trial court's order does not specify the grounds for its summary judgment, we must affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Provident Life and Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

### Rebel's affirmative defense of release

When a defendant moves for summary judgment based on an affirmative defense, the defendant must conclusively establish each essential element of the affirmative defense. *Ryland Grp., Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996) (per curiam); *see* Tex. R. Civ.

P. 166a(c). Thom argues that the district court erred in granting Rebel's summary-judgment motion because Rebel's failed to establish all of the essential elements of its release defense. Specifically, Thom argues that: (1) Rebel's failed to prove the Release was an enforceable contract, (2) the Release was inconspicuous; (3) actual knowledge cannot replace the requirement of conspicuousness; and (4) the Release did not identify all defendants.

### (1) Enforceable contract

Thom asserts for the first time on appeal that Rebel's failed to prove that the Release was an enforceable contract. A release is a contract. *Williams v. Glash*, 789 S.W.2d 261, 264 (Tex. 1990). The elements of an enforceable contract are: (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) meeting of the minds, (4) a communication that each party consented to the terms of the contract, (5) execution and delivery of the contract with intent it become mutual and binding on both parties, and (6) consideration. *Advantage Physical Therapy, Inc. v. Cruse*, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). When a defendant moves for a summary judgment based on the affirmative defense of release, it must prove all the elements of that defense such that there is no genuine issue of material fact. *Torchia v. Aetna Cas. and Sur. Co.*, 804 S.W.2d 219, 222 (Tex. App.—El Paso 1991, writ denied) (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984)).

The Release and Thom's deposition testimony supply the necessary proof of the elements of a contract. It is undisputed that Rebel's had a mechanical bull, that Thom wanted to ride it, and that Thom understood he had to sign the Release in order to ride the bull. Thom testified that he saw a sign posted in Rebel's that he would have to sign a waiver related to injury. He

4

admitted that he signed the Release without reading it. Absent fraud, misrepresentation, or deceit, signatory parties are bound by the terms of the contract signed, regardless of whether they read it. *In re McKinney*, 167 S.W.3d 833, 835 (Tex. 2005) (per curiam). Thom does not urge fraud, misrepresentation, or deceit regarding the terms of the release as a basis for reversal.

Thom criticizes the sentence construction of the Release, but its terms convey the required elements. As set out above, the headline of the Release states that it is a release and assumption of risk by the participant. The introductory language states as follows:

> In consideration of the services of REBEL'S HONKY TONK their agents, owners, officers, volunteers, participants, employees and all other persons or entities[,] acting on behalf of myself my spouse, my children, my parents, my heirs, assigns, personal representative and estate as follows:

The Release then lists the known and unknown dangers of riding the bull (including paralysis and death), the risk of which it states are entwined with the "essential qualities of the activity." The second- and third-numbered paragraphs provide as follows:

> 2. I expressly agree and promise to accept and assume all of the risks existing with this activity. My participation in this activity is purely voluntary and I elect to participate in spite of the risks.
>
> 3. I hereby voluntarily release, forever discharge, and agree to indemnify and hold harmless from any and all claims, demands or causes of action which are in any way connected with my participation in this activity or my use of equipment or facilities, including any such claims which allege negligent acts or omissions.

Thom's name is handwritten in the fourth-numbered paragraph immediately below the third-numbered paragraph. (We discuss below how the Release sufficiently identifies the parties released

5

from liability.) After three more enumerated paragraphs totaling ten lines of text, the Release states as follows:

> By signing this document, I acknowledge that if anyone is hurt or property is damaged during my participation in this activity, I may be found by a court of law to have waived my right to maintain a lawsuit against REBELS HONKY TONK on the basis of any claim form which I have them herein.
>
> I have had sufficient opportunity to read this entire document. I have read and understand it in its entirety and I agree to be bound by its terms.

Thom signed his name immediately underneath the last paragraph.

The language of the Release and Thom's signature, along with his deposition testimony, show the absence of any genuine issue of material fact and prove as a matter of law that the Release was an enforceable contract.

**(2) Conspicuousness of release language**

Based on the theory that a pre-injury release of a party's own negligence is an extraordinary shifting of risk, the Texas Supreme Court has developed fair notice requirements to be applied to release agreements. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 507-08 (Tex. 1993). To constitute fair notice, a release must satisfy the elements of conspicuousness and the express-negligence rule unless both contracting parties have actual knowledge of the plan's terms, in which case an agreement can be enforced even if the fair notice requirements were not satisfied. *See Storage & Processors, Inc. v. Reyes*, 134 S.W.3d 190, 192 (Tex. 2004). Express negligence mandates that the intent of the parties seeking to indemnify themselves for their own negligence be specifically stated in the four corners of the contract. *Id.* Thom argues only that

6

Rebel's did not meet the "conspicuousness" element of fair notice, which requires that something appear on the face of the contract to attract the attention of a reasonable person when he looks at it. *Id*. Specifically, Thom argues that the Release does not conform to the definition of "conspicuous" as codified in the Texas Business and Commerce Code because the Release does not contain contrasting type or color.[1]

Thom relies primarily on the Texas Supreme Court's *Littlefield* opinion, which rejected a release consisting of six paragraphs with thirty lines of text in "minuscule" type compressed into a 3" x 4.25" square in the lower-left-hand corner of a registration form. *Littlefield v. Schaefer*, 955 S.W.2d 272, 274 (Tex. 1997). The heading of the *Littlefield* release was printed in four-point font and contained 28 characters per inch. *Id.* The main text was printed in even smaller typeface and contained 38 characters per inch. *Id.* The text of the *Littlefield* release, described by

---

[1] The Uniform Commercial Code's definition of "conspicuous" is codified in the Texas Business and Commerce Code:

> (10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> > (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
> >
> > (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Tex. Bus. & Com. Code Ann. § 1.201 (10) (West 2009).

the Court as "illegible," "too small," and "containing minuscule print," ultimately led the Court to conclude that the release was not conspicuous. *Id.* at 275 ("Where a party is not able to know what the contract terms are because they are unreadable, as a matter of law the exculpatory clause will not be enforced.").

Contrary to Thom's assertions, the release at issue here does not suffer from the failings described in *Littlefield*. Unlike the *Littlefield* release, the Release here is not embedded in a form intended for other purposes, but rather Rebel's entire form is a release and assumption of risk. Beginning with its capitalized title, down to Thom's undisputed signature, the Release is wholly dedicated to warning mechanical bull riding participants of the dangers, instructing participants on the necessary precautions, and informing participants of the rights they are waiving.

The Release's title leaves little doubt as to the document's purpose: "**PARTICIPANT AGREEMENT, RELEASE AND ASSUMPTION OF RISK**." The paragraph numbered "3" on Rebel's release clearly and legibly states, "I hereby voluntarily *release*, forever discharge, and agree to indemnify and hold harmless from any and all claims . . . which allege negligent acts or omissions." (Emphasis added.) The Release's text only contains 18 characters per inch, making it much easier to read than *Littlefield*'s text. It also contains bolded and underlined warnings that certain participants are not allowed to ride, and participants must inform the mechanical bull operator about pre-existing health conditions so that the operator may determine whether the participant will be allowed to ride. Consistent with the supreme court's declaration that the "releasing party must be able to read what is being released," *Littlefield*, 955 S.W.2d at 275, the release that Thom signed makes its intent clear by taking up an entire letter-sized page, using a

8

reasonable font size, and not surrounding the release language with text unrelated to riding the mechanical bull. *See Quintana v. CrossFit Dallas, L.L.C.*, 347 S.W.3d 445, 451 (Tex. App.—Dallas 2011, no pet.) (concluding that two-page release, with "release" printed in bold near top of second page and in larger type than other text on that page was conspicuous); *see also Gaspard v. Logix Commc'ns Corp.*, No. 14-00-00688-CV, 2001 WL 1590080, at *2 (Tex. App.—Houston [14th Dist.] Dec. 13, 2001, no pet.) (mem. op., not designated for publication) (concluding that release printed on its own page and in standard typeface was conspicuous).

The test of conspicuousness is "whether attention can reasonably be expected to be called to it." *Quintana*, 347 S.W.3d at 450 (quoting *Littlefield*, 955 S.W.2d at 275). "A release is conspicuous when a reasonable person against whom a clause is to operate ought to have noticed it." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 511 (Tex. 1993); *see Quintana*, 347 S.W.3d at 451. Although business and commerce code section 1.201(10) contains two subsections describing what "conspicuous terms include," the statute does not require that a release satisfy both subsections. *See* Tex. Bus. & Com. Code Ann. § 1.201(10) (West 2009); *see also Quintana*, 347 S.W.3d at 450. Rather, subsections (A) and (B) are merely two possible ways of making a release conspicuous. It is also possible that other factors not listed in subsections (A) or (B) may create a conspicuous release. *See* Tex. Gov't Code Ann. § 311.005(13) (West 2005) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.").

9

Thus, based on the foregoing authority, we conclude that the undisputed summary judgment evidence shows that this release satisfies the conspicuousness element (the only challenged element here) of fair-notice and thus satisfies all of the fair-notice requirements.

**(3) Actual knowledge of the release**

Even an inconspicuous release can be valid when the party resisting its application had actual knowledge of the release. *Storage & Processors*, 134 S.W.3d at 192; *Missouri Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 791 (Tex. App.—Austin 2002, pet. dism'd). The burden of proving "actual knowledge" is on Rebel's, as the party seeking release. *See Garcia v. J.J.S. Enters., Inc.*, 225 S.W.3d 57, 64 (Tex. App.—El Paso 2005, no pet.). Even if we concluded that the release failed the test of conspicuousness, the record shows conclusively that Thom had actual knowledge of the nature of the release.

The record reflects that during his oral deposition, Thom was asked if he knew what he was signing when he completed the Release before riding the mechanical bull on the night of his injury. Despite claiming he had not read the Release, Thom testified that he knew he was signing a "waiver" for possible injuries:

Q: Did you formulate any idea in your head about what kind of piece of paper this might be, what they might want you to sign?

A: A waiver.

Q: Was that your understanding at the time?

A. Well, that was the waiver that it said on the wall.

Q: Right.

10

A: So I put two and two together, and—but as I said, it happened pretty quick, and I didn't really get a chance to read it.

Q: What did you mean when you said waiver?

. . . . [Objection omitted]

A: A piece of paper to sign.

Q: For what purposes?

. . . . [Objection omitted]

A: I mean—I guess for some type of injury.

Q: That was your understanding at the time, correct?

A: Yeah. But once again, I should have read it.


Thom denied that the release was difficult to understand or confusing:


Q: If you had read the document at the time, you would have understood what it meant, correct?

A: Yes.


Thom acknowledged his comprehension of the meaning of every paragraph. He claimed he felt rushed into signing the release, but there is nothing in the record to indicate that he was intimidated or forced to sign the release without reading it. And Thom further agreed in his deposition that there was nothing to stop him from saying, "Hey, hold on a second. I need to read this."

Thom understood the effect of signing Rebel's release, and as such Thom had actual knowledge of the agreement, making the release enforceable even if the fair-notice elements were lacking. *Missouri Pac. R.R. Co.*, 86 S.W.3d at 791 (applying fair-notice requirements to indemnity

11

agreement). Even if Thom chose not to read the release, the record reflects his understanding that what he signed was a waiver for possible injury, proving that this release served its principal function and that Thom had actual knowledge of it.

As such, the release satisfies the conspicuousness requirements and, even if it did not, Rebel's met its burden of proving Thom's actual knowledge, and thus the trial court correctly found that Thom is bound by the release's terms.

### (4) Release effective as to all defendants

Thom also argues that Rainbow Cattle Company, Inc. and Zack Truesdell, President of Rainbow Cattle Company, Inc., are not named parties protected by the release, thus the affirmative defense of release is not available to them. We disagree.

A release form is only effective against the parties that are named in the release or are described in the release with such particularity that the party's identity is not in doubt. *Memorial Med. Ctr. of E. Tex. v. Keszler*, 943 S.W.2d 433, 434 (Tex. 1997) (per curiam) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420 (Tex. 1984)). Interpretation of a release is to be decided by the court as a question of law. *Memorial Med. Ctr. of E. Tex.*, 943 S.W.2d at 434; *Westwind Exploration v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 381 (Tex. 1985).

Thom claims that *Duncan v. Cessna Aircraft Co.* supports his argument that the release does not extend to Rainbow Cattle Company and Zack Truesdell. *See Duncan*, 665 S.W.2d at 420. *Duncan* involved a wrongful death action in which Carolyn Duncan's husband was killed as a result of a negligently flown Cessna 150 airplane that crashed in New Mexico. *Duncan*, 665 S.W.2d at 418. Duncan first sued the pilot and the airplane owner. *Id.* That case was settled

and a release was executed. *Id.* The Duncan release stated, "we hereby release Air Plains West, Inc., . . . the Estate of Benjamin A. Smithson, Jr., deceased, or *any other corporations or persons whomsoever responsible therefor, whether named herein or not*, from any and all claims of every kind." *Id*. (emphasis added). Duncan then instituted a wrongful death action against Cessna. *Id.* Cessna claimed that its liability to the Duncan family was discharged by the Duncan release of Air Plains West. *Id.* The court ultimately held that Cessna was not protected by the Duncan release because the reference to "all corporations" did not supply the descriptive particularity necessary to identify and release Cessna. *Id.* at 420. The court analogized the Duncan release to the invalid one in *Lloyd v. Ray* that purported to release "all other persons, firms, and corporations" in a medical-malpractice claim. *See id.* at 419 (citing *Lloyd v. Ray*, 606 S.W.2d 545, 547 (Tex. Civ. App.—San Antonio 1980, writ ref'd n.r.e.)).

The Rebel's release is different from those in *Duncan* and *Lloyd* because it expressly lists Rebel's Honky Tonk and its "owners."[2] It does not merely refer to an unlimited, general class of potential defendants. This release's reference to the owners of Rebel's Honky Tonk is sufficient to identify Rainbow Cattle Company because Rainbow Cattle Company's identity and its connection with the activity for which Thom signed this release is not in doubt. *See, e.g.*, *Winkler v. Kirkwood*

---

[2] The Release expressly lists Rebel's Honky Tonk as a protected party and encompasses Rebel's "agents, *owners*, [and] officers":

In consideration of the services of REBELS HONKY TONK their agents, *owners*, officers, volunteers, participants, employees and all other persons or entities acting on behalf of myself, my spouse, my children, my parents, my heirs, assigns, personal representative and estate . . .

(Emphasis added.)

13

*Atrium Office Park*, 816 S.W.2d 111, 113-14 (Tex. App.—Houston [14th Dist.] 1991, writ denied) (concluding that plaintiff's release of "the Club" from any injuries sustained while participating in center's programs clearly intended to release all individuals and entities involved in operation, maintenance, and administration of center). It is undisputed, and even acknowledged by Thom in his own pleadings, that Rainbow Cattle Company is the owner of Rebel's Honky Tonk.

Further, because Zack Truesdell was not served before the district court granted the summary judgment, it is irrelevant whether he was named in the release; he was not a party to this suit when the trial court granted the summary judgment. And even if he had been, for the same reasons stated above, Zack Truesdell was covered by this release as an owner or agent of Rebel's Honky Tonk.

We conclude that each of the Rebel's entities conclusively established its entitlement to summary judgment on its affirmative defense of release.

**Assumed risk**

Even if Rebel's were not entitled to summary judgment on its affirmative defense of release, Rebel's also argued that Thom assumed the risks that led to his alleged injury, and that it was entitled to summary judgment on this ground. Although assumption of the risk has been abolished in ordinary negligence actions, *see Farley v. M.M. Cattle Co.*, 529 S.W.2d 751, 758 (Tex. 1975), the defense remains viable in cases where a claimant knew of an activity's inherent dangers and expressly consented to those dangers. *See, e.g.*, *Willis v. Willoughby*, 202 S.W.3d 450, 453 (Tex. App.—Amarillo 2006, pet. denied) (concluding that claimant contractually assumed risk of engaging in self-defense instruction, which she expressly agreed was inherently dangerous

14

activity); *Newman v. Tropical Visions, Inc.*, 891 S.W.2d 713, 718 (Tex. App.—San Antonio 1994, writ denied) (citing *Farley*, 529 S.W.2d at 758). The effect of the assumed-risk defense is to negate any duty owed to the plaintiff by the defendant to protect against foreseeable risks. *See Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 458 (Tex. 1972); *Willis*, 202 S.W.3d at 453.

Thom contends that summary judgment based on the affirmative defense of assumed risk was improper because Rebel's did not conclusively prove that Thom "knew of the inherent dangers involved in riding a mechanical bull." Specifically, Thom argues that because he did not read the release, he could not have known of the risks of riding the mechanical bull. We disagree.

Before getting on the mechanical bull, Thom witnessed multiple people fall off of it. In fact, he testified that he did not see anyone ride the mechanical bull without falling off at some point. In his testimony, Thom agreed that falling is somewhat dangerous in any situation:

> Q: Would you agree with me that falling, no matter what the circumstances, always entails a degree of risk?
>
> A: Yes.

Thom also saw posted signs on the wall near the mechanical bull that required everyone to sign a document prior to riding the mechanical bull. Thom admitted that he knew he was signing a waiver for injuries. Thom was also asked by the mechanical bull operator if he had any pre-existing injuries that might make it unsafe for him to ride, which Thom denied despite his prior back problems. This undisputed evidence shows that Thom was well aware of the risks involved with riding the mechanical bull prior to riding it.

15

Even if Thom did not recognize the inherent risks involved with riding a mechanical bull just by watching other riders and other context clues, it is well established that one is presumed to know the contents of the contract that they are signing and are bound by its legal effects. *See Missouri Pac. R.R. Co.*, 86 S.W.3d at 791; *see also Estes v. Republic Nat'l Bank of Dallas*, 462 S.W.2d 273, 276 (Tex. 1970) (concluding that absent fraud, failure to read contract before signing it is generally not ground to avoid it). The first and second paragraphs of the agreement that Thom signed explicitly detailed the risks and required Thom to acknowledge them, stating:

> I acknowledge that riding a mechanical bull entails known and unanticipated risks that could result in physical or emotional injury, paralysis, death to myself, to property, or to third parties. I understand that such risk simply cannot be eliminated without jeopardizing the essential qualities to the activity.
>
> **THE RISKS INCLUDE, BUT ARE NOT LIMITED TO[]:** *Falling* off of or being *thrown* from the mechanical bull, which could result in muscu[lo]skeletal injuries including head, neck and *back* injuries.
>
> . . . .
>
> I expressly agree and promise to *accept and assume all of the risks* existing with this activity. My participation in this activity is purely voluntary and I elect to participate in spite·of the risks.

(Emphases added.) Since one is presumed to know the contents of a contract that one signs, *see Missouri Pac. R.R. Co.*, 86 S.W.3d at 791, and because the risks are expressly identified and accepted in the agreement, Thom had no excuse to be oblivious to the risks associated with riding Rebel's mechanical bull. *See Willis*, 202 S.W.3d at 453 (concluding that because claimant signed release containing provision expressly acknowledging inherent danger involved in self-defense training and "knowingly and willingly assume[d] *all* risk of injury or other damage associated

16

with such training," contractual doctrine of assumed risk applied, effectively relieving defendant of duty to protect claimant from foreseeable injury while providing instruction in self-defense). Here, a foreseeable risk of injury accompanied riding a mechanical bull, Thom contractually assumed "all of the risks," and chose to participate in mechanical bull riding in spite of such risks. Accordingly, Rebel's was entitled to judgment as a matter of law on its assumed-risk defense. *See id.* at 454. Thom's argument that the trial court erred in granting summary judgment on this ground is unpersuasive.

## CONCLUSION

Having found that Rebel's conclusively established its affirmative defenses of release and assumption of risk, we affirm the district court's summary judgment.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed on Motion for Rehearing

Filed: April 17, 2013

17