Kimberly QUINTANA, Appellant,

v.

**CROSSFIT DALLAS, L.L.C. d/b/a CrossFit Plano and Troy Dodson, Appellees.**

No. 05–10–00146–CV.

Court of Appeals of Texas, Dallas.

Aug. 11, 2011.

---

Majed Nachawati, Fears & Nachawati PLLC, Matt McKool, Barrett W. Stetson,

Thomas P. Moynihan, Law Firm of Barrett W. Stetson, Dallas, TX, for Appellant.

John S. Kenefick, Bryan Rutherford, Macdonald Devin; P.C., Dallas, TX, for Appellees.

Before Justices BRIDGES, LANG–MIERS, and MURPHY.

## OPINION

Opinion By Justice LANG–MIERS.

Kimberly Quintana sued her personal trainer Troy Dodson and CrossFit Dallas, L.L.C. d/b/a CrossFit Plano for negligence, breach of warranty, and breach of contract. CrossFit and Dodson moved for summary judgment on the affirmative defense of release and the trial court granted the motion. On appeal, Quintana argues that the trial court erred by denying her motion for continuance, by denying her motion for leave to file a second amended petition, and by granting summary judgment in favor of appellees. We affirm the trial court's judgment.

### BACKGROUND

Quintana alleged that she was an overweight woman who had reached a plateau in her weight loss program and hired CrossFit to provide supervised weight training and work-out instruction under Dodson's direction. She alleged that Dodson instructed her to perform an exercise that she had never done before and that Dodson failed to properly supervise her during the exercise. She alleged that as a result of Dodson's and CrossFit's negligence, she fell, shattered a bone in her right arm in several places, and had to undergo surgery and physical therapy. Quintana sued CrossFit and Dodson for breach of contract, breach of express and

implied warranties, and negligence. She sought over $84,000 in actual damages.

When Quintana joined CrossFit, she completed and signed a contract entitled Health Assessment Waiver and Goals Work Sheet. The contract is two pages long. At the top of the contract are blanks for the participant to provide identifying personal information such as name, address, and telephone numbers. There are two additional sections on the first page of the contract: a "Health Assessment" section, which asks 14 questions concerning the participant's health history; and an "Informed Consent/Assumption of the Risk" section, which contains two paragraphs with a blank for the participant's initials after each paragraph. Five lines of the second paragraph continue to the top of the second page. The second page of the contract contains three additional sections: a "Release," discussed in more detail below; a paragraph entitled "Indemnification" with a blank for the participant's initials following the paragraph; and a paragraph entitled "Use of picture(s)/film/likeness" with a blank for the participant's initials following the paragraph. At the bottom of the second page is the following language in bold with portions underlined: "I have fully *read* and fully *understand* the foregoing assumption of risk, and release of liability.... I understand that by *signing* this form I am *waiving* valuable legal rights." Blanks for the participant's signature and date are at the bottom of the second page. Quintana's initials appear in each blank on the contract and her signature appears at the bottom of the agreement.

CrossFit and Dodson filed a combined no-evidence and traditional motion for summary judgment. In the traditional motion for summary judgment, they asserted that Quintana's claims were barred because she signed a release discharging CrossFit and its employees of all liability arising from her participation in CrossFit's fitness programs and classes. Quintana responded that appellees' release did not meet the requirements of fair notice.

The trial court set a hearing on appellees' motion for summary judgment for the same date as the trial setting. Six days before the hearing date, Quintana filed a motion for continuance of the trial setting asking the court for additional time in which to conduct further discovery. In the last paragraph of her six-page motion, she also asked the court to reschedule the hearing on appellees' motion for summary judgment. Two days after she filed the motion for continuance, she filed a motion for leave to file a second amended petition. Quintana argues that she set hearings on her motions for the same date as the hearing on appellees' motion for summary judgment. Although the record does not confirm that the hearings were set for the same date, appellees do not dispute Quintana's representation. At the hearing, the trial court did not rule on Quintana's motions. The court rendered summary judgment in favor of appellees on all of Quintana's claims. Quintana filed a motion for new trial, which the trial court denied.

### MOTIONS FOR CONTINUANCE AND FOR LEAVE TO FILE AMENDED PETITION

■ In her first and second issues, Quintana argues respectively that the trial court abused its discretion when it did not consider and grant her motion for continuance and motion for leave to file a second amended petition. Appellees argue that Quintana did not preserve these issues for our review because she did not obtain rulings on the motions. Quintana agrees that she did not obtain rulings, but she argues that the motions were set for hearing at the same time as the motion for summary

judgment and the trial court erred by not considering and ruling on the motions.

▮ As a prerequisite to complaining on appeal about the denial of a motion, however, the record must show that the motion was brought to the trial court's attention and that the trial court either denied the motion or refused to rule on the motion and the complaining party objected to the refusal. *See* Tex.R.App. P. 33.1(a); *Bryant v. Jeter*, 341 S.W.3d 447, 449–50 (Tex.App.-Dallas 2011, no pet.); *Hightower v. Baylor Univ. Med. Ctr.*, 251 S.W.3d 218, 224–25 (Tex.App.-Dallas 2008, pet. struck).

In this case, the record shows that when the trial court called the case, the court said, "First thing I've got in front of me is Defendant's Motion for Summary Judgment." The court asked CrossFit and Dodson if they wanted to be heard on their motion. They said they did and began arguing the motion. Quintana did not object or otherwise bring to the trial court's attention that she had filed a motion for continuance and a motion for leave to file a second amended petition. Instead, she responded to appellees' arguments on the motion for summary judgment. Consequently, the record does not show that Quintana called her motions to the attention of the trial court, and there is no ruling on the motions in the record. But even if the trial court refused to rule on the motions, which is not reflected in the record, there is nothing in the record to show that Quintana objected to the refusal. Consequently, we conclude that Quintana did not preserve these issues for our review. *See Bryant*, 341 S.W.3d at 449–50; *Hightower*, 251 S.W.3d at 224–25. We resolve issues one and two against appellant.

### Motion for Summary Judgment

In issues three, four, and five, Quintana argues that the trial court erred by grant-ing appellees' traditional motion for summary judgment based on the affirmative defense of release because the release did not satisfy the requirements of fair notice. In issue six, she argues that the trial court erred by granting the motion because the assumption of the risk doctrine does not exist in Texas.

### Standard of Review

The standard for reviewing a traditional summary judgment is well-established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex.App.-Dallas 2010, no pet.). The movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c); *Dickey v. Club Corp. of Am.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey*, 12 S.W.3d at 175. In determining whether a disputed material fact issue exists precluding summary judgment, we take evidence favorable to the nonmovant as true. *Nixon*, 690 S.W.2d at 548–49. We indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.2005). If a defendant moves for summary judgment on an affirmative defense, it must conclusively establish each essential element of the affirmative defense. *Selz v. Friendly Chevrolet, Ltd.*, 152 S.W.3d 833, 836 (Tex.App.-Dallas 2005, no pet.).

### Applicable Law—Release

▮ Release is an affirmative defense. Tex.R. Civ. P. 94. The effect of a release like the one at issue in this case "is to relieve a party in advance of responsibility

for its own negligence." *Dresser Indus., Inc. v. Page Petroleum, Inc.,* 853 S.W.2d 505, 507 (Tex.1993). "It operates to extinguish the claim or cause of action as effectively as would a prior judgment between the parties and is an absolute bar to any right of action on the released matter." *Id.* at 508. Because a pre-injury release of a party's "own negligence is an extraordinary shifting of risk, [the Texas Supreme Court] has developed fair notice requirements which apply to these types of agreements." *Id.* To constitute fair notice, a release must satisfy the requirements of conspicuousness and the express negligence rule. *Storage & Processors, Inc. v. Reyes,* 134 S.W.3d 190, 192 (Tex.2004); *Dresser,* 853 S.W.2d at 508. Whether a provision provides fair notice is a question of law for the courts. *Dresser,* 853 S.W.2d at 509.

■ The business and commerce code's standard for conspicuousness applies to our determination of whether a release is conspicuous. *Mickens v. Longhorn DFW Moving, Inc.,* 264 S.W.3d 875, 879 (Tex. App.-Dallas 2008, pet. denied) (citing *Dresser,* 853 S.W.2d at 510–11). It states:

> (10) "Conspicuous," with reference to a term, means so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it. Whether a term is "conspicuous" or not is a decision for the court. Conspicuous terms include the following:
>
> (A) a heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size; and
>
> (B) language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surround-

ing text of the same size by symbols or other marks that call attention to the language.

TEX. BUS. & COM.CODE ANN. § 1.201(10) (West 2009). The test for the court is "whether attention can reasonably be expected to be called to [the provision]." *Mickens,* 264 S.W.3d at 879 (quoting *Littlefield v. Schaefer,* 955 S.W.2d 272, 275 (Tex.1997)); *Sydlik v. REEIII, Inc.,* 195 S.W.3d 329, 332–33 (Tex.App.-Houston [14th Dist.] 2006, no pet.).

■ The express negligence rule states that if a party intends to be released from its own future negligence it must express that intent in clear, unambiguous terms within the four corners of the contract. *Reyes,* 134 S.W.3d at 192; *Sydlik,* 195 S.W.3d at 333. The purpose of "the express negligence rule is to require scriveners to make it clear when the intent of the parties is to exculpate" a party for that party's own negligence. *Atlantic Richfield Co. v. Petroleum Pers., Inc.,* 768 S.W.2d 724, 726 (Tex.1989). Language that specifically refers to "any negligent act of [the released party]" may be sufficient to define the parties' intent. *Id.*

### Discussion

**Conspicuousness**

■ Quintana argues that the release does not meet the conspicuousness requirement of fair notice because both the heading and the text must "be greater in size than the surrounding text and larger or contrasting type, font, or color from the language in the surrounding text." We disagree. Although the business and commerce code defines "conspicuous" to include language in which both the heading and text are in larger or contrasting type, it does not require both the heading and the text to be in larger or contrasting type. *See* TEX. BUS. & COM.CODE § 1.201(10). The

only requirement is that the release be "so written, displayed, or presented that a reasonable person against which it is to operate ought to have noticed it." *Id.; Reyes,* 134 S.W.3d at 192; *Dresser,* 853 S.W.2d at 509, 511; *Sydlik,* 195 S.W.3d at 332–33.

The release states:

**Release:**

In full consideration of the above mentioned risks and hazards and in full consideration of the fact that I am willingly and voluntarily participating in the activities made available by CrossFit Plano, and with my full understanding of all of the above, I hereby waive, release, remise and discharge CrossFit Plano and its agents, officers, principals and employees and volunteers, of any and all liability, claims, demands, actions or rights of action, or damages of any kind related to, arising from, or in any way connected with, my participation [sic] CrossFit Plano fitness programs/classes, including those allegedly attributed to the negligent acts or omissions of the above mentioned parties.

This agreement shall be binding upon me, my successors, representatives, heirs, executors, assigns, or transferees. If any portion of this agreement is held invalid, I agree that the remainder of the agreement shall remain in full legal force and effect.

If I am signing on behalf of a minor child, I also give full permission for any person connected with CrossFit Plano to administer first aid deemed necessary, and in case of serious illness or injury, I give permission to call for medical and or surgical care for the child and to transport the child to a medical facility deemed necessary for the well being of the child.

Initials: *KNQ*

The entire document is two pages long; the word "release" is near the top of the second page, appears in larger type than any other text on that page, and is bolded. It contains three paragraphs and a total of twelve lines of text, after which is a blank for the participant's initials. Quintana's initials appear in the blank. We conclude that the release is sufficiently conspicuous to provide fair notice. *See* Tex. Bus. & Com.Code § 1.201(10); *Reyes,* 134 S.W.3d at 192; *Sydlik,* 195 S.W.3d at 332–33; *Arthur's Garage, Inc. v. Racal–Chubb Sec. Sys.,* 997 S.W.2d 803, 814 (Tex.App.-Dallas 1999, no pet.).

**Express Negligence Rule**

 Quintana complains that the release did not satisfy the requirements of the express negligence rule because it did not state specifically that it released liability for the injuries she sustained, it did not specifically release Dodson, and it is too broad, vague, and ambiguous to provide fair notice. The release specifically stated

I hereby waive, release and discharge CrossFit Plano and its agents, officers, principals and employees and volunteers, of any and all liability, claims, demands, actions or rights of action, or damages of any kind related to, arising from, or in any way connected with, my participation [sic] CrossFit Plano fitness programs/classes, including those allegedly attributed to the negligent acts or omissions of the above mentioned parties.

In addition to the language in the release, the form contained the following language under the bold heading "INFORMED CONSENT/ASSUMPTION OF THE RISK," which Quintana also initialed:

I willingly assume full responsibility for any and all risks that I am exposing myself to as a result of my participation in CrossFit Plano programs/classes and accept full responsibility for any injury or death that may result from partic-

ipation in any activity, class or physical fitness program. . . . With my full understanding of the above information, I agree to assume any and all risk associated with my participation in CrossFit Plano fitness programs/classes.

We do not agree that the language of the release is too vague, that it does not specifically include Quintana's injuries, and that it does not specifically release Dodson. The language used in the release specifically states that the participant assumes "any and all liability" for "damages of any kind" "allegedly attributed to the negligent acts or omissions of" CrossFit Plano and its employees. It specifically refers to the negligence of CrossFit or any of its employees. And it is undisputed that Dodson was an employee of CrossFit. We conclude that the release language is sufficient to satisfy the requirements of the express negligence rule. *See Reyes*, 134 S.W.3d at 192 (parties' intent must be stated specifically in the four corners of the contract); *Atlantic Richfield*, 768 S.W.2d at 726 (language stating that appellee "agrees to . . . indemnify" appellant "in any matter arising from the work performed hereunder, including but not limited to *any negligent act or omission of*" appellant is sufficient to satisfy requirements of express negligence rule).

Having concluded that the release satisfies the fair notice requirements of conspicuousness and the express negligence rule, we further conclude that the trial court did not err by granting appellees' motion for summary judgment on the ground that the release barred appellant's claims. We resolve issues three, four, and five against appellant.

**Assumption of the Risk**

In her sixth issue, Quintana argues that the summary judgment must be reversed because the agreement contains an "assumption of the risk" paragraph, and as-

sumption of the risk does not exist in Texas. In one paragraph in her appellate brief, she argues that

Texas law has eliminated the assumption of risk doctrine. With the adoption of [c]omparative negligence, the defense of contributory negligence and the defense of "Assumption of Risk" were both merged with comparative negligence and those defenses were abolished in Texas as confirmed in *Farley v. MM Cattle Co.*, 529 S.W.2d 751 (Tex.1975), [sic] See also Chapter 33 of the Civil Practices and Remedies Code as Amended, 1995.

Quintana does not argue how the assumption of the risk doctrine impacts our analysis. *See* TEX.R.APP. P. 38.1(i). Consequently, we resolve issue six against appellant.

CONCLUSION

We affirm the trial court's judgment.