

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00168-CV

THEODIS DODSON                                                        APPELLANT

V.

ROBERT FORD                                                          APPELLEE

----------

## FROM THE 96TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

The trial court granted summary judgment on the professional negligence and civil conspiracy claims brought by Appellant Theodis Dodson, pro se, against his former attorney, Appellee Robert Ford.[2]  In four issues, Dodson argues that the trial court erred by granting summary judgment on his conspiracy claim

---

[1]*See* Tex. R. App. P. 47.4.

[2]While this case was pending in the trial court, Ford's attorney filed a suggestion of death regarding Ford.

based on the grounds that Dodson had not been exonerated and that the suit was filed outside the statute of limitations, erred by not appointing him counsel, and abused its discretion by not ruling on his "Next Friend's Motion for Recognition and Request for Finding And/Or Determinations for Noncompos Mentis of Plaintiff." Because we hold that the trial court did not err by granting summary judgment and did not abuse its discretion by not appointing him counsel and that Dodson has not shown that he was harmed by the trial court's failure to rule on the next friend's motion, we affirm.

**Background**

Ford and another attorney represented Dodson on a charge of capital murder. Dodson pled guilty under a plea agreement and, on March 4, 2008, the trial court entered a judgment of guilty and sentenced him to confinement for life without parole.

On October 10, 2011, Dodson filed suit against Ford for negligence and conspiracy. He alleged that Ford failed to assist Dodson in preparing an insanity defense, failed to inform the trial court that Dodson was mentally ill, failed to have Dodson examined for competence to stand trial, induced Dodson to enter a plea of guilty while Dodson was mentally ill, and "did not subject [Dodson] to any of the procedures required by law in prosecuting mentally ill offenders."

Regarding his conspiracy claim, Dodson alleged that Ford had entered into a civil conspiracy with the assistant district attorney prosecuting the case. He alleged that Ford requested psychological evaluations of Dodson during the

2

criminal proceedings, that he received two psychological reports regarding Dodson, that he delivered copies of these reports to the ADA without presenting them to the trial court, that the ADA subsequently decided not to pursue his own motion for a psychological evaluation, and that Ford "concealed the reports from the court by not presenting them, so that the court did not receive the evidence, which would have led to a bona fide doubt of [Dodson's] competence to stand trial." He alleged that Ford did not intend to request a competence hearing for Dodson "so that [Dodson's] criminal case could be disposed of with a mentally ill offender's plea of guilt" and that Ford "knew or should have known that the trial court could not orde[r] a competenc[e] hearing . . . without having seen the psychological reports."

Dodson attached several exhibits to his petition. These exhibits included a report from Dr. Kelly Goodness, titled "Most Salient Mitigation Factors," made in connection with Dodson's criminal trial and a letter from Michael Chafetz, a board certified clinical neuropsychologist. Chafetz's letter informed Dodson that he had examined Dodson for the mitigation phase of his trial and that Chafetz did not address the legal issues of mental state or competence at the time of Dodson's crime because he was not asked to do so. Dodson also attached the affidavit that Ford had made in connection with a previously filed post-conviction writ of habeas corpus proceeding filed by Dodson.

Dodson also attached the motion that the ADA had filed in his criminal case seeking to have Dodson examined. The motion stated that Dodson had

3

engaged the services of Goodness and Chafetz and had asked the trial court to order that Dodson submit to a psychological evaluation by an expert retained by the State.

Ford filed an answer, affirmative defenses, and special exceptions. Freddie Brewer, also an inmate, filed a "next friend affidavit" stating that he was assisting Dodson as next friend and that he was unable to pay costs. He also filed with Dodson a response to Ford's answer. In this response, Brewer requested that the trial court appoint Dodson counsel. The trial court denied the request.

Ford filed a traditional and no-evidence motion for summary judgment. Ford alleged in his motion that Dodson had freely and voluntarily pled guilty in his criminal case. As a ground for traditional summary judgment, Ford asserted that Dodson's claims fell within the two-year statute of limitations and that his claims were filed over one year and five months outside that period. As a no-evidence ground, Ford cited *Peeler v. Hughes & Luce*[3] and asserted that Dodson had the burden to establish that he had been exonerated of his conviction. In *Peeler*, the Supreme Court of Texas considered a woman's negligence claim brought against her former attorney after she was convicted of a federal crime, and the court held that she could not show causation because "as a matter of law, it is the illegal conduct rather than the negligence of a convict's counsel that is the

---

[3]909 S.W.2d 494, 497–98 (Tex. 1995).

4

cause in fact of any injuries flowing from the conviction, unless the conviction has been overturned."[4]  Ford argued that Dodson had not shown any evidence of his exoneration and that Dodson therefore lacked the evidence to prove causation on his claims.

Ford attached summary judgment evidence to his motion, much of it the same evidence included by Dodson with his petition.  He attached the indictment in Dodson's criminal case, showing that it was filed on September 12, 2007.  Next, he attached a copy of the judgment in the criminal case, showing that the judgment was entered and the sentence imposed on March 4, 2008.  He also attached a copy of Dodson's petition, including the exhibits that Dodson filed with his petition.  The petition's file stamp showed that it was filed on October 10, 2011.

Ford also included Goodness's report and his own affidavit from the earlier habeas corpus proceeding.  In Goodness's report, she opined that Dodson had a mental illness and had an "IQ [that] is low enough to be in the mentally retarded range."  But she further explained that Dodson's "adaptive functioning exceeds the levels required for a diagnosis of Mental Retardation."  In her opinion, the most accurate diagnosis of Dodson's cognitive deficits was "Borderline Intellectual Functioning."  In Ford's affidavit, he stated that Goodness had

---

[4]*Id.* at 495, 497–98.

5

determined that Dodson was competent and that "every psychological assessment demonstrates that [Dodson] was competent."

Dodson filed a response to the summary judgment motion. He asserted that the statute of limitations was tolled because Ford did not rebut his assertion that he, Dodson, was of unsound mind. He also stated that Ford's assertion that Dodson's own acts caused his damages should be left to a fact finder. He also filed an affidavit in which he averred that he is of unsound mind.

Brewer filed a motion for recognition, asking the trial court to recognize him as next friend. He also asked the court to make a finding that Dodson was incompetent. No order on this motion appears in the record.

The trial court granted summary judgment for Ford. Dodson now appeals.

### Standard of Review

We review a summary judgment de novo.[5] We consider the evidence presented in the light most favorable to the non-movant, crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding evidence contrary to the non-movant unless reasonable jurors could not.[6] We indulge every reasonable inference and resolve any doubts in the non-movant's

---

[5]*Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

[6]*Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).

favor.[7]  A defendant who conclusively negates at least one essential element of a cause of action is entitled to summary judgment on that claim.[8]

A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense.[9] To accomplish this, the defendant-movant must present summary judgment evidence that conclusively establishes each element of the affirmative defense.[10] To conclusively establish the affirmative defense of limitations, a defendant must (1) conclusively prove that the cause of action accrued before the commencement of the statute of limitations period, and (2) negate the discovery rule, if it applies and has been pleaded or otherwise raised, by proving as a matter of law that there is no genuine issue of material fact about when the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, the nature of the plaintiff's injury.[11]  If the defendant establishes that

---

[7]*20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

[8]*Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010), *cert. denied*, 131 S. Ct. 1017 (2011); *see* Tex.R. Civ. P. 166a(b), (c).

[9]*Frost Nat'l Bank*, 315 S.W.3d at 508–09; *see* Tex. R. Civ. P. 166a(b), (c).

[10]*See Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008).

[11]*KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

the statute of limitations bars the action, the plaintiff must then adduce summary judgment proof raising a fact issue in avoidance of the statute of limitations.[12]

## Analysis

Dodson does not contest the trial court's summary judgment on his negligence claim against Ford. He does, however, argue that the trial court erred by granting summary judgment on his conspiracy claim. In Dodson's second issue, he argues that the trial court erred by granting summary judgment on the ground that his claims were barred by the statute of limitations. In his third issue, he argues that the trial court should have granted a partial summary judgment only on his negligence claim and should not have disposed of his conspiracy claim on the ground that he had not been exonerated because he produced as summary judgment evidence an affidavit that he is of unsound mind. We construe Dodson's argument as asserting that the Supreme Court's *Peeler* holding applies only to professional negligence claims and does not bar his conspiracy claim.

It is unclear whether Dodson's conspiracy claim is for the common law tort of civil conspiracy or whether it is a claim for conspiracy under 42 U.S.C. § 1983.[13] Our analysis applies to both categories of tort claims.

---

[12]*See id.*

[13]42 U.S.C.A. § 1983 (West 2012); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709, 119 S. Ct. 1624, 1638 (1999) (noting that § 1983 creates a species of tort liability).

The statute of limitations for civil conspiracy claims is two years.[14]  This same limitations period applies to a claim under § 1983.[15]  Ford produced summary judgment evidence showing that all of the wrongful acts were alleged to have occurred by the time of Dodson's conviction, that Dodson was found guilty and sentenced on March 4, 2008,[16] and that Dodson filed this suit on October 10, 2011.

The general rule in the summary judgment context is that a defendant seeking summary judgment on an affirmative defense such as limitations has the burden to prove each essential element of that defense.[17]  Once the defendant has done so, if the plaintiff wishes to defeat summary judgment on the basis of an affirmative defense, that is "in the nature of confession and avoidance,"[18] the

---

[14] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.003 (West Supp. 2012); *McPherson Rd. Baptist Church v. Mission Investors/Fort Worth, LP*, No. 02-08-00412-CV, 2009 WL 2579647, at *8 (Tex. App.—Fort Worth Aug. 20, 2009, no pet.) (mem. op.) (applying the two-year statute of limitations to a claim for civil conspiracy); *Mayes v. Stewart*, 11 S.W.3d 440, 453 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (same).

[15] *See Wallace v. Kato*, 549 U.S. 384, 387, 127 S. Ct. 1091, 1095 (2007) (stating that for § 1983 claims, the applicable statute of limitations is the state's period of limitations for personal injury torts).

[16] *See Poag v. Flories*, 317 S.W.3d 820, 826 (Tex. App.—Fort Worth 2010, pet. denied) ("In general, a cause of action accrues and limitations begin running when a wrongful act causes a legal injury.").

[17] *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

[18] *Zale Corp. v. Rosenbaum*, 520 S.W.2d 889, 891 (Tex. 1975); *Henry v. Premier Healthstaff*, 22 S.W.3d 124, 127–28 (Tex. App.—Fort Worth 2000, no pet.).

9

burden shifts to the plaintiff. In that case—when the non-movant plaintiff does not dispute that limitations have run but argues that, nonetheless, limitations should not apply to end the plaintiff's suit—the non-movant must produce sufficient summary judgment evidence to raise a genuine issue of material fact on the defense.[19]

Not all attempts to avoid summary judgment based on limitations give rise to an evidentiary burden on the non-movant. If the plaintiff non-movant raises a challenge to the *existence* of limitations, the defendant movant has the burden to negate the applicability of the raised issue.[20] Thus, if the non-movant has pled or otherwise argued that limitations have not run because of the discovery rule or

---

[19]*See Ryland Group*, 924 S.W.2d at 121 (holding that after movant established its right to summary judgment based on limitations, non-movants had the burden to present enough proof to raise a fact issue on their affirmative defenses of fraudulent concealment and willful misconduct); *see also Boyd v. Kallam*, 152 S.W.3d 670, 676 (Tex. App.—Fort Worth 2004, pet. denied) (defining a plea in confession and avoidance and stating that "[t]he party seeking to benefit from the plea in avoidance also bears the burden of proof on the matter because that party will generally have greater access to the facts necessary to establish the matter"); Black's Law Dictionary 339 (9th ed. 2009) (defining "confession and avoidance" as "[a] plea in which a defendant admits allegations but pleads additional facts that deprive the admitted facts of an adverse legal effect").

[20]*Zale Corp.*, 520 S.W.2d at 891. *Cf. Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 781, 784–85 (Tex. 2007) (holding that while the movant asserting limitations has the burden to negate the discovery rule, "which defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the claim," the non-movant asserting a violation of the Texas constitution's open courts provision has the burden to raise a fact issue about whether he had a reasonable time to discover the alleged wrong and bring suit within the limitations period or that he sued within a reasonable time after discovering the alleged wrong).

the application of a tolling statute, the movant is not entitled to summary judgment on the basis of limitations unless the movant has established that the raised issue does not apply.[21] In that case, the issue of tolling becomes a part of the case that the defendant movant must prove in order to establish its right to judgment as a matter of law on the affirmative defense of limitations. Who has the burden of proof therefore generally depends on whether the plaintiff resisting summary judgment acknowledges that limitations have run or refutes it. Keeping these rules in mind, we consider the defenses and evidence presented below.

In response to Ford's motion for summary judgment, Dodson asserted that the limitations period had not run because he was of unsound mind.[22] Section

---

[21] *KPMG Peat Marwick*, 988 S.W.2d at 748; *Jennings v. Burgess*, 917 S.W.2d 790, 793 (Tex. 1996). *But see Doe v. Catholic Diocese of El Paso*, 362 S.W.3d 707, 723 (Tex. App.—El Paso 2011, no pet.) (stating that where the non-movant *asserts* a tolling statute, the movant must negate the applicability of the statute but nevertheless putting the burden on the non-movant to *prove* that he was of unsound mind during the relevant time period); *Choice Acquisitions No. Two Inc. v. Noesi*, No. 14-06-00973-CV, 2007 WL 2239206, at *6 (Tex. App.—Houston [14th Dist.] Aug. 7, 2007, no pet.) (mem. op.) (stating that it was the non-movant appellants' burden to raise a fact issue on tolling based on mental incapacity in order to defeat summary judgment); *Grace v. Colorito*, 4 S.W.3d 765, 769 (Tex. App.—Austin 1999, pet. denied) ("To prevent a summary judgment on an unsound-mind theory, the *non-movant* needs to produce specific evidence that would enable the court to conclude that she did not have the mental capacity to pursue litigation for a definite period of time, or produce a fact-based expert opinion to that effect.") (emphasis added). Our holding would be the same under either approach.

[22] *See Ray v. O'Neal*, 922 S.W.2d 314, 315 (Tex. App.—Fort Worth 1996, writ denied) (considering tolling argument raised in a response to a summary judgment motion); *see also Proctor v. White*, 172 S.W.3d 649, 652 (Tex. App.—Eastland 2005, no pet.) (considering discovery rule argument raised in response

16.001 of the civil practice and remedies code provides that if a person is under the legal disability of unsound mind when a cause of action accrues, the time for which the person is of unsound mind is not included in calculating the limitations period.[23] Ford therefore had to make a prima facie showing that this provision did not apply to toll limitations[24] before the burden would shift to Dodson to raise a question of fact on the issue.[25]

Section 16.001 of the civil practice and remedies code does not define the term "unsound mind."[26] But the Supreme Court of Texas has said that the disability of persons of unsound mind includes "the inability to participate in, control, or even understand the progression and disposition of their lawsuit."[27]

---

to summary judgment motion as tried by consent when movant did not object to non-movant's reliance on the argument).

[23] Tex. Civ. Prac. & Rem. Code Ann. § 16.001(a), (b) (West 2002).

[24] *Jennings*, 917 S.W.2d at 793. *But see Chavez v. Davila*, 143 S.W.3d 151, 156 (Tex. App.—San Antonio 2004, pet. denied) (putting the burden on the non-movant asserting tolling because she was of unsound mind to raise a question of fact on that issue).

[25] *See* Tex. R. Civ. P. 166a(c); *see also Bank of Commerce v. Barton*, 605 S.W.2d 638, 639 (Tex. Civ. App.—Fort Worth 1980, writ dism'd) ("Where evidence would be available to raise such a disability as an issue of fact, summary judgment would be improper.").

[26] *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.001.

[27] *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 755 (Tex. 1993); *see also Hargraves v. Armco Foods, Inc.*, 894 S.W.2d 546, 547 (Tex. App.—Austin 1995, no writ) (noting that section 16.001 does not define "unsound mind" but that the probate code defines the term as "persons non compos mentis, mentally

12

Thus, we look at the summary judgment evidence submitted to see whether Ford made a prima facie showing that Dodson had the ability to participate in, control, or understand the progression and disposition of the lawsuit he filed.[28]

Ford attached to his summary judgment motion the report from Dr. Goodness, the same report that Dodson attached to his petition. As stated above, Goodness did opine that Dodson had a mental illness and that Dodson had an "IQ [that] is low enough to be in the mentally retarded range." But she further explained that a diagnosis of mental retardation is a two-prong evaluation, with IQ being only one diagnostic factor. She stated that "the second prong of the diagnosis requires that the deficient IQ be coupled with concurrent deficits in adaptive functioning" and that Dodson's "adaptive functioning exceeds the levels required for a diagnosis of Mental Retardation." In her opinion, the most accurate diagnosis of Dodson's cognitive deficits was "Borderline Intellectual Functioning."

In Ford's affidavit, he stated that Goodness had made an initial finding that Dodson was competent and that her opinion never varied during her work on the

---

disabled persons, insane persons, and other persons who are mentally incompetent to care for themselves or manage their property and financial affairs").

[28] *See Ruiz*, 868 S.W.2d at 755.

case.[29]  He also stated that regarding Dodson's asserting that Ford did not investigate the insanity defense, he had told Dodson that their experts did not consider insanity a viable defense and therefore they made a joint decision not to pursue it, and the psychological assessment did not support such a defense.[30] This evidence is sufficient to make a prima facie case that, though Dodson suffers from mental illness and has a low IQ, he does not lack the inability to participate in, control, or understand the progression and disposition of this lawsuit.[31]

Dodson then had the burden to produce evidence to raise a fact issue on the question of tolling.  He produced no additional evidence other than his own affidavit stating that he is of unsound mind.[32]  The affidavit includes a reference to "next friend affiant," suggesting that Brewer made the affidavit, but it is signed

---

[29] *See Hargraves*, 894 S.W.2d at 547 (observing that the probate code definition of a person of unsound mind includes persons who are mentally incompetent).

[30] *See id.* (stating that "in general, 'persons of unsound mind' and 'insane persons' are synonymous").

[31] *See Ruiz*, 868 S.W.2d at 755.

[32] *See* Tex. R. Civ. P. 166a(f) (requiring affidavits supporting or opposing summary judgment to affirmatively show "that the affiant is competent to testify to the matters stated therein"); *see also* Tex. R. Evid. 902(10)(b) (setting out an affidavit form that meets the requirements of the rules of evidence, which includes an assertion that the affiant is of sound mind).

14

by Dodson.[33]   We assume, then, that Dodson executed the affidavit but with

Brewer's help.

The affidavit states,

I, Theodis Dodson by and through Next Friend, do hereby certify deposed and state that I am unsound of mind and I have filed suit in this case against Defendant by Next Friend for the purpose of this summary judgment evidence; Affiant declare that due to variety of mental disorders and borderline retardation; that constitutes a legal disability which Affiant did plea in his complaint at page 2, IV[.] Affiant swear that Defendant have not offered any dispositive evidence to show that affiant is not entitled to limitation disabilities.  If not for the Next Friend Affiant could not have file his suit due to disability[.]  Attention need to be place on the Next Friend whom by law is acting on Affiant behalf, take away next friend Affiant disability must stand.  Affiant claim alleged numerious claims or causes of action.  Affiant states that Defendant may well be entitled to a partial summary judgment on malpractice of the defendant attorney however, Affiant states that all the civil right or constitutional violations can not be disposed of by the partial motion filed by Defendant.

Because Dodson is an interested party, his affidavit testimony was

required to be uncontroverted, clear, positive, direct, credible, free from

contradiction, and susceptible to being readily controverted.[34]  His statement that

he is of unsound mind is nothing more than a legal conclusion.[35]  Although

---

[33] *See* Tex. R. Civ. P. 166a(f) (requiring affidavits supporting or opposing summary judgment to be made on personal knowledge).

[34] *See* Tex. R. Civ. P. 166a; *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192, 198 (Tex. App.—Fort Worth 2006, no pet.).

[35] *See Lindley v. McKnight*, 349 S.W.3d 113, 126 (Tex. App.—Fort Worth 2011, no pet.) (observing that "[a] conclusory statement is one that does not provide the underlying facts to support the conclusion").

15

Dodson stated that he had mental disorders and borderline retardation, he provided no facts to support any conclusion that he did not have the ability to participate in, control, or understand the progression and disposition of this lawsuit.[36] Conclusory statements are incompetent summary judgment evidence and are neither credible nor susceptible to being readily controverted.[37] Thus, Dodson's affidavit testimony is insufficient to raise a question of fact.[38] To show the tolling of limitations on the ground that Dodson is of unsound mind, he was not required to show that he had been adjudicated incompetent.[39] But he was required to produce some competent summary judgment evidence raising a fact issue. Dodson produced no other evidence to refute Ford's evidence that, although Dodson suffered from mental illness and had a low IQ, he was not of unsound mind at the time his cause of action accrued.

---

[36] *See Ruiz*, 868 S.W.2d at 755.

[37] *Residential Dynamics, LLC*, 186 S.W.3d at 198; *see also Mercer v. Daoran Corp.*, 676 S.W.2d 580, 583 (Tex. 1984) (stating that "[a] legal conclusion in an affidavit is insufficient to raise an issue of fact in response to a motion for summary judgment or to establish the existence of a fact in support of a motion for summary judgment").

[38] *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984); *Souder v. Cannon*, 235 S.W.3d 841, 849 (Tex. App.—Fort Worth 2007, no pet.).

[39] *See Casu v. CBI Na-Con, Inc.*, 881 S.W.2d 32, 34 (Tex. App.—Houston [14th Dist.] 1994, no writ) (stating that to toll limitations on the ground that the plaintiff is incompetent, the plaintiff need not have been adjudicated incompetent); *see also Smith v. Erhard*, 715 S.W.2d 707, 708 (Tex. App.—Austin 1986, writ ref'd n.r.e.) ("The mental state contemplated by this statute [tolling the running of limitations] is ordinarily a question of fact and does not necessarily contemplate an adjudication of insanity.").

Because Dodson did not produce sufficient summary judgment evidence to rebut Ford's prima facie showing, the trial court did not err by granting summary judgment on limitations. We overrule Dodson's second issue. Accordingly, we do not need to address Dodson's third issue asserting that the trial court erred by granting summary judgment on the ground that there was no evidence that he had been exonerated.

In Dodson's first issue, he argues that the trial court abused its discretion by not appointing counsel and denying Dodson's motion for appointed counsel when the record showed that Dodson presented unrebutted medical evidence that he has been diagnosed with mental illness and borderline mental retardation. We review a trial court's failure to appoint trial counsel in a civil case for an abuse of discretion.[40]

The Supreme Court has never held that a civil litigant must be represented by counsel, but it has "suggested . . . that under exceptional circumstances, 'the public and private interests at stake [may be] such that the administration of justice may best be served by appointing a lawyer to represent an indigent civil litigant.'"[41] What is "exceptional" under this standard is "by definition rare and unusual—something not easily identified by a general rule."[42]

---

[40] *See Gibson v. Tolbert*, 102 S.W.3d 710, 712–13 (Tex. 2003).

[41] *Id.* at 712.

[42] *Id.* at 713.

17

The nature of the case—legal malpractice—is not rare or unusual, and the public and private interests at stake are not so exceptional that the administration of justice would be served by appointment counsel.[43] The only other ground on which the trial court could have found exceptional circumstances is Dodson's mental illness or low IQ. But the record does not show that his mental illness or borderline intellectual functioning had any effect on his ability to communicate with the trial court.[44]

Dodson cites *Jackson v. Dallas Police Dep't* for the proposition that a trial court denying appointment of counsel in a civil case must consider certain factors and must present specific findings explaining why counsel was denied.[45] As noted in *Jackson*, the Fifth Circuit has held that appointment of counsel should be made in § 1983 cases where "exceptional circumstances" are present, and the court directs district courts to consider four factors in determining whether to appoint counsel for an indigent plaintiff.[46] Dodson has cited no authority for the proposition that Fifth Circuit rules and procedures for appointment of counsel in

---

[43] *See id.*

[44] *See Rogers v. Franklin*, No. 02-07-00114-CV, 2008 WL 1867151, at *5 (Tex. App.—Fort Worth Apr. 24, 2008, no pet.) (mem. op.) (stating that nothing in the record demonstrated the severity of Rogers's alleged mental disorder or its effect on his ability to communicate with the trial court).

[45] 811 F.2d 260, 262 (5th Cir. 1986).

[46] *See id.* at 261–62; *see also Robbins v. Maggio*, 750 F.2d 405, 412 (5th Cir. 1985).

civil suits apply to state court actions. The Fifth Circuit rules for appointment of counsel in federal cases do not apply to actions brought in state court,[47] but even if they did, we have already held that exceptional circumstances do not exist in this case. Accordingly, Dodson's argument based on federal precedent is unpersuasive.

In Dodson's fourth and final issue, he argues that the trial court abused its discretion by not ruling on his "Next Friend's Motion for Recognition and Request for Finding And/Or Determinations for Noncompos Mentis of Plaintiff." He argues that the trial court "abused its discretion because the record would have shown that [Dodson] was incompetent[,] and he would have used a defense of statu[t]e of limitation[s] of not being competent."

Brewer filed a request to be recognized as next friend and to have a hearing to determine Dodson's competence for purposes of Brewer's appointment as next friend. Brewer stated that he had "clearly been past [sic] over, or had not been acknowledged by the court nor by Defendant." He asserted that his "responsibility in protecting [Dodson's] rights in this cause have been impinged or infringed upon by the failure of this honorable court and Defendant to include next friend in the activities of the Prosecution and defense

---

[47]*Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (stating that Texas courts may draw upon the precedents of the Fifth Circuit but are not obligated to do so); *see also Wion v. Thayler*, No. 10-09-00369-CV, 2010 WL 4644497, at *4 (Tex. App.—Waco Nov. 17, 2010, no pet.) (mem. op.) (pointing out that the Fifth Circuit method for reviewing the denial of appointing counsel is used when a civil case is filed in federal court, not state court).

19

of this case." He asserted the rights given under civil procedure rule 44.[48] No ruling on the motion appears in the record. Neither Dodson nor Brewer set the motion for a hearing.[49]

In the motion, Dodson did not ask the trial court to order a competence determination for purposes of gathering evidence that he was of unsound mind to raise a fact issue to defeat summary judgment. Nor did he point to any authority that would have required or even allowed the trial court to do so. The competence determination asked for in the motion was specifically requested for purposes of showing that Brewer should be allowed to act as next friend. The trial court considered Dodson's summary judgment response, which was filed by Brewer. Even if the trial court did not expressly recognize Brewer as Dodson's next friend, he did consider the filings that Brewer made on Dodson's behalf. Accordingly, Dodson has not shown that he was harmed by the trial court's failure to rule on the motion.[50] We overrule Dodson's fourth issue.

---

[48] See Tex. R. Civ. P. 44 (providing that "persons non compos mentis who have no legal guardian may sue and be represented by 'next friend'" and that "[s]uch next friend shall have the same rights concerning such suits as guardians have").

[49] See Tex. R. App. P. 33.1; see also Quintana v. CrossFit Dallas, L.L.C., 347 S.W.3d 445, 449 (Tex. App.—Dallas 2011, no pet.) ("As a prerequisite to complaining on appeal about the denial of a motion, however, the record must show that the motion was brought to the trial court's attention and that the trial court either denied the motion or refused to rule on the motion and the complaining party objected to the refusal.").

[50] See Tex. R. App. P. 44.1.

## Conclusion

Having overruled each of Dodson's issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, MEIER, and GABRIEL, JJ.

DELIVERED:  September 26, 2013