**AFFIRM; and Opinion Filed July 9, 2018.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-17-00948-CV

**GRACIELA QUIROZ, INDIVIDUALLY, A/N/F OF XXXX ("JOHN DOE 1") AND XXXX ("JOHN DOE 2"), MINORS, AND ROBERT SULLIVAN, INDIVIDUALLY, A/N/F OF XXXX ("JOHN DOE 3"), Appellants**

**V.**

**JUMPSTREET8, INC., JUMPSTREET, INC. AND JUMPSTREET CONSTRUCTION, INC., Appellees**

### On Appeal from the 298th Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. 15-02671

## MEMORANDUM OPINION

Before Justices Myers, Boatright, and O'Neill[1]
Opinion by Justice O'Neill

Appellant Graciela Quiroz brought a negligence suit against appellees Jumpstreet8, Inc.,

Jumpstreet, Inc., and Jumpstreet Construction, Inc. (collectively Jumpstreet) for injuries she

sustained while jumping on a trampoline at a Jumpstreet facility. Jumpstreet moved for summary

judgment based upon a pre-injury release signed by Quiroz. Quiroz responded and filed a cross-

motion for partial summary judgment. The trial court granted Jumpstreet's motion for summary

judgment, denied Quiroz's cross-motion for partial summary judgment, and dismissed all of

Quiroz's claims. In one issue, Quiroz contends the trial court erred in granting Jumpstreet's motion

---

[1] The Hon. Michael J. O'Neill, Justice, Assigned

for summary judgment and denying her motion for partial summary judgment. We affirm the trial court's order.

BACKGROUND

On November 29, 2014, Quiroz and her sixteen-year-old son went to Jumpstreet. Prior to using the facility, Quiroz was given a pre-injury release form that was titled "Jumpstreet, LLC Release and Parent/Guardian Waiver of Liability and Assumption of Risk." The Release recited the following statements under the title: "PLEASE READ THIS DOCUMENT CAREFULLY. BY SIGNING IT, YOU ARE GIVING UP LEGAL RIGHTS." After signing the Release, Quiroz and her son jumped on a trampoline. When Quiroz attempted to do a flip, she injured her neck. Quiroz is now paralyzed from the waist down. Quiroz brought suit, individually, against Jumpstreet for negligence and gross negligence and as next friend of two minor children for their loss of parental consortium and their bystander claims for mental anguish. Robert Sullivan (Quiroz's spouse) joined the suit for loss of consortium and as next friend of a third minor child for loss of parental consortium and a bystander claim for mental anguish.

Jumpstreet filed a "Traditional Motion for Summary Judgment" alleging summary judgment was proper because Quiroz had signed a Release. In the motion, Jumpstreet stated that because Quiroz alleged negligence and gross negligence claims against Jumpstreet arising from her utilizing a Jumpstreet facility, the Release signed by Quiroz expressly released any negligence and gross negligence claims. Jumpstreet asserted the Release was valid and enforceable because it specifically named the party to be released, it met the fair notice requirements of conspicuousness and the express negligence rule, and it met the contractual elements of mutual intent and valid consideration.

Quiroz filed a response to Jumpstreet's motion for summary judgment and a cross-motion for partial summary judgment that alleged summary judgment for Jumpstreet was improper

–2–

because there was an issue of material fact regarding the Release. Quiroz alleged she was entitled to a partial summary judgment because the Release was "void, voidable and unenforceable" because the named entity did not exist at the time of her injury, the Release was ambiguous, a parent could not waive claims of minors, and the Release could not waive gross negligence claims because it would be against public policy to do so. The trial court granted Jumpstreet's traditional motion for summary judgment and denied Quiroz's cross-motion for partial summary judgment. Quiroz timely filed this appeal.

ISSUE PRESENTED

In her sole issue on appeal, Quiroz contends the trial court erred by granting Jumpstreet's motion for summary judgment and denying her cross-motion for partial summary judgment. Quiroz asserts that as a matter of law, no contract existed between her and Jumpstreet, LLC, the entity named in the Release. Quiroz argues there was no "meeting of the minds on the contract's essential terms" between her and Jumpstreet, LLC because Jumpstreet, LLC had been dissolved in June 2011 and did not exist at the time of her injury in November 2014. Quiroz contends that because a nonexistent entity cannot form or enter into a contract, the Release is void and unenforceable as a matter of law.

Quiroz further contends the Release did not meet the "fair notice requirement" because none of the Jumpstreet defendants are named in the Release; only the nonexistent entity "Jumpstreet, LLC" is specifically named in the Release. Quiroz argues the Release also never specifically identified or released a claim for an injury due to paralysis. Further, Quiroz asserts that as a matter of law, a parent cannot waive a minor's claims, and a Release cannot waive any claims for gross negligence because that is against public policy.

Jumpstreet responds that the trial court properly granted summary judgment in their favor because Quiroz signed a valid, enforceable Release before using its facility. The Release satisfied

–3–

both the fair notice requirement and the express negligence rule as to both negligence and gross negligence claims. Jumpstreet also argues the Release meets the general requirements of a valid contract because it shows a "meeting of the minds" and valid consideration. Jumpstreet further responds that because the consortium and bystander claims are derivative claims, they are barred as a matter of law.

APPLICABLE LAW

We review a trial court's summary judgment order de novo. *Travelers Ins. Co. v. Joachim,* 315 S.W.3d 860, 862 (Tex. 2010). A party moving for summary judgment has the burden of showing that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. *City of Dallas v. Dallas Morning News, LP,* 281 S.W.3d 708, 712 (Tex. App.—Dallas 2009, no pet.); *see also* TEX. R. CIV. P. 166A(c). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When both sides move for summary judgment, however, each party bears the burden of establishing it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). When the trial court grants one motion and denies the other, we review the summary judgment evidence presented by both parties and determine all the questions presented. *S. Crushed Concrete, LLC v. City of Houston*, 398 S.W.3d 676, 678 (Tex. 2013).

The Release signed by Quiroz was a prospective release of future claims, including claims based on Jumpstreet's own negligence. A release is an absolute bar to the released matter and extinguishes a claim or cause of action. *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 509 (Tex. 1993). Jumpstreet had to show that the Release's language met the fair notice requirement of conspicuousness and the express negligence rule. *See id.* "Conspicuous" means

the terms must be presented in a manner that a reasonable person against whom it is to operate ought to have notice. *Quintana v. CrossFit Dallas, L.L.C.*, 347 S.W.3d 445, 450 (Tex. App.—Dallas 2011, no pet,).

The express negligence rule is not an affirmative defense, but it is a rule of contract interpretation. *See Fisk Elec. Co. v. Constructors & Assocs., Inc.*, 888 S.W.2d 813, 814 (Tex. 1994). This rule states that if a party intends to be released from its own future negligence, it must express that intent in clear, unambiguous terms within the four corners of the contract. *Atl. Richfield Co. v. Petroleum Pers., Inc.*, 768 S.W.2d 724, 726 (Tex. 1989); *Quintana*, 347 S.W.3d at 450.

DISCUSSION

Parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 129 & n.11 (Tex. 2004). Texas law recognizes and protects a broad freedom of contract. *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 671 (Tex. 2008). Under Texas law, a release is a contract and is subject to avoidance just like any other contract. *Williams v. Glash,* 789 S.W.2d 261, 264 (Tex. 1990). When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent. *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex. 1994). Public policy dictates that courts are not to interfere lightly with this freedom of contract. *See, e.g.*, *Gym–N–I Playgrounds, Inc. v. Snider,* 220 S.W.3d 905, 912 (Tex. 2007) (commercial lease expressly waiving warranties); *In re Prudential*, 148 S.W.3d at 129 & n.11 (contractual jury waiver)*; BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 767 (Tex. 2005) (liquidated damages clause)*; Mo., Kan. & Tex. Ry. Co. of Tex. v. Carter,* 68 S.W. 159, 164 (Tex. 1902) (contract waiving responsibility for fires caused by railroad engines).

A tortfeasor can claim the protection of a release only if the release refers to him by name or with such descriptive particularity that his identity or his connection with the tortious event is not in doubt. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420 (Tex. 1984); *see also Frazer v. Tex. Farm Bureau Mut. Ins. Co.*, 4 S.W.3d 819, 823-24 (Tex. App.—Houston [1st Dist.] 1999, no pet.) (with use of "and its affiliated companies," release sufficiently identified Texas Farm Bureau Underwriters such that its identity is not in doubt.). Here, the Release clearly and unambiguously stated it applied to all Jumpstreet entities that are engaged in the trampoline business. Although the Release specifically named "Jumpstreet, LLC," it also stated the Release equally applied to "its parent, subsidiaries, affiliates, other related entities, successors, owners, members, directors, officers, shareholders, agents, employees, servants, assigns, investors, legal representatives and all individuals and entities involved in the operation of Jumpstreet."

The record shows the entity named "Jumpstreet, LLC" was dissolved in June, 2011. The record also contains a deposition transcript from Martin L. Brooks who testified he and Tim Crawford were cousins and the sole owners of all the Jumpstreet entities, all the Jumpstreet entities were engaged in the trampoline business, and the entity named "Jumpstreet, Inc." was the parent company. The record shows that in her original petition, Quiroz named seventeen different Jumpstreet entities, including "Jumpstreet, Inc.," the parent company. In her "fourth amended petition" that was in effect at the time of the summary judgment hearing, however, she named only three of the Jumpstreet entities, including the parent company. The Jumpstreet appellees in this case are all engaged in the trampoline business and described with such particularity that their identity was never in doubt. *Duncan*, 665 S.W.2d at 420; *Frazer*, 4 S.W.3d at 823-24.

Although the Release in this case contains two pages, it conspicuously contains several paragraphs with bolded headings and capitalized font. On page one, an "assumption of risk" section is separate from a "release of liability" section. The Release warns prospective patrons to

–6–

"please read this document carefully" and "by signing it, you are giving up legal rights." This warning appears directly under the title of the Release and is written in all capital letters. On page two, the Release has an "assumption of the risk" paragraph in all capital letters and surrounded by a box, calling specific attention to it. On both pages, there are several references to the risks and dangers of participating in Jumpstreet services throughout the Release. The "waiver and release" language is repeated a final time, in capital lettering, immediately above the signature line where Quiroz printed her name, date of birth, age, address, and telephone number. *See Quintana*, 347 S.W.3d at 452 (concluding a two-page contract titled "Health Assessment Waiver and Goals Work Sheet" that included word "release" in larger and bold print near top of second page and initialed by party was "sufficiently conspicuous to provide fair notice").

The Release also does not run afoul of the express negligence rule. As noted above, the waiver and release language is in capital lettering immediately above the signature line where Quiroz printed her name, date of birth, age, address, and telephone number. *See Quintana*, 347 S.W.3d at 452. Further, on page one in the assumption of risk paragraphs, the person signing the Release acknowledges the "potentially hazardous activity," and the Release lists possible injuries including "but not limited to" sprains, heart attack, and even death. Although paralysis is not specifically named as an injury, it is certainly less than death and thus would be included within the "but not limited to" language. Also, the release of liability paragraph above Quiroz's signature expressly lists the types of claims and causes of action she is waiving, including "negligence claims, gross negligence claims, personal injury claims, and mental anguish claims." *Id*.

Quiroz next argues that a parent cannot waive a minor child's claims. Quiroz asserts *Munoz v. II Jaz Inc*., 863 S.W.2d 207 (Tex. App.—Houston [14th Dist.] 1993), is the leading Texas case. In *Munoz*, the parents sued an amusement park for damages after their child was injured on a ride. The trial court granted the park's motion for summary judgment based upon a pre-injury release

signed by the parents. The appellate court reversed, holding that the Family Code did not give parents the power to waive a child's cause of action for personal injuries. *Munoz* is distinguishable from Quiroz's claims in that Quiroz sustained the injury and not her children. Moreover, the cause of action for loss of parental consortium, like the cause of action for loss of spousal consortium, is a derivative cause of action. As such, the defenses that bar all or part of the injured parent's recovery have the same effect on the child's recovery. *Reagan v. Vaughn*, 804 S.W.2d 463, 468 (Tex. 1990), *on reh'g in part* (Mar. 6, 1991). And although bystander claims are considered independent and not derivative, it is also true that the bystander plaintiff cannot recover unless the injured person can recover. *Estate of Barrera v. Rosamond Vill. Ltd. P'ship,* 983 S.W.2d 795, 799–800 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

Quiroz lastly argues a pre-injury release cannot apply to gross negligence claims because that is against public policy. Generally, a contract provision "exempting a party from tort liability for harm caused intentionally or recklessly is unenforceable on grounds of public policy. RESTATEMENT (SECOND) OF CONTRACTS § 195(1 (1981). Quiroz cites our case in *Van Voris v. Team Chop Shop*, 402 S.W.3d 915 (Tex. App.—Dallas 2013, no pet.), for this proposition. There is disagreement among the courts of appeals as to whether a party may validly release claims for gross negligence. The Texas Supreme Court has not ruled on whether a pre-injury release as to gross negligence is against public policy when there is no assertion that intentional, deliberate, or reckless acts cause injury.[2] Some appellate courts have held that negligence and gross negligence are not separable claims and that therefore a release of liability for negligence also releases a party

---

[2] We note that Quiroz cited *Zachry Construction Corp. v. Port of Houston Authority Of Harris County.*, 449 S.W.3d 98 (Tex. 2014), in her "First Supplemental Brief," for the proposition that "a pre-injury release of future liability for gross negligence is void as against public policy." In *Zachry*, the Texas Supreme Court had to decide, in a breach of contract case, whether a no-damages-for-delay provision shielded the owner from liability for *deliberately* and *wrongfully* interfering with the contractor's work. In Zachry, the Texas Supreme Court held the no-damages-for-delay provision at issue was unenforceable as against public policy. *Zachry*, however, is distinguishable because that case concerned how a no-delay-for-damages provision could be enforced if the Port's intentional misconduct caused the delay. Here, Quiroz has not asserted that Jumpstreet's alleged negligence was intentional, deliberate, or reckless.

from liability for gross negligence. *See Tesoro Petroleum Corp. v. Nabors Drilling U.S.,* 106 S.W.3d 118, 127 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Newman v. Tropical Visions, Inc.,* 891 S.W.2d 713, 722 (Tex. App.—San Antonio 1994, writ denied).

In contrast, we recently held that a plaintiff's execution of a contract specifically releasing a defendant from liability for negligence did not release the defendant from liability for gross negligence. *Van Voris*, 402 S.W.3d at 926. We reasoned that the public policy requiring an express release from negligence also requires an express release from gross negligence. *See id.* We specifically pointed out that "our conclusion is limited to the context presented by this case." *See id*. Other courts have held that pre-accident waivers of gross negligence are invalid as against public policy. *See Sydlik v. REEIII, Inc.,* 195 S.W.3d 329, 336 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Smith v. Golden Triangle Raceway,* 708 S.W.2d 574, 576 (Tex. App.—Beaumont 1986, no writ).

*Van Voris* is distinguishable from the case here in that Quiroz's Release specifically stated that both negligence and gross negligence claims were waived. The assumption of risk paragraph that lists the specific types of claims/causes of actions that were included in the Release was encased in a box, had all capital lettering, and appeared above the signature line. As noted above, Quiroz received fair notice regarding the claims being waived. *See Quintana*, 347 S.W.3d at 450.

CONCLUSION

The Release met both the fair notice requirement for conspicuousness and the express negligence rule. It was, thus, enforceable. *See Quintana*, 347 S.W.3d at 452. As a result, Jumpstreet met its burden of establishing it was entitled to summary judgment as a matter of law. *See City of Garland*, 22 S.W.3d at 356. We conclude the trial court properly granted Jumpstreet's motion for summary judgment. *See Travelers Ins. Co.*, 315 S.W.3d at 862.

We affirm the trial court's order granting Jumpstreet's motion for summary judgment and denying Quiroz's cross-motion for partial summary judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE, ASSIGNED

170948F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

GRACIELA QUIROZ, INDIVIDUALLY, A/N/F OF XXXX ("JOHN DOE 1") AND XXXX ("JOHN DOE 2"), MINORS, AND ROBERT SULLIVAN, INDIVIDUALLY, A/N/F OF XXXX ("JOHN DOE 3"), Appellants

No. 05-17-00948-CV     V.

JUMPSTREET8, INC., JUMPSTREET, INC. AND JUMPSTREET CONSTRUCTION, INC., Appellees

On Appeal from the 298th Judicial District Court, Dallas County, Texas
Trial Court Cause No. 15-02671.
Opinion delivered by Justice O'Neill.
Justices Myers and Boatright participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Jumpstreet8, Inc., Jumpstreet, Inc. and Jumpstreet Construction, Inc. recover their costs of this appeal from appellants Graciela Quiroz and Robert Sullivan.

Judgment entered this 9th day of July, 2018.